PETER DECKER, for the use of JOHN FRYTENBERGER, *against* ABRAHAM EISENHAUER and HENRY BOLANDER.

If the payor of a note stands by and sees it assigned to a third person, without giving the assignee notice of an existing defence, he shall afterwards pay the amount of the note to the assignee, although the consideration thereof should have entirely failed; and whether his conduct proceeded from ignorance or design.

THIS was an appeal from the Circuit Court of Union county, held by justice HUSTON.

The case is fully stated in the opinion of the court.

*Greenough*, for appellant.—To sustain the position, that an obligor, who stands by and sees his bond assigned to a third person, cannot afterwards avail himself of any defence, which then existed, cited *Gordon* v. *The N. Amer. Ins. Co.* 1 *Bin.* 434. 5 *Wils. Bac. Ab.* 47–49. 3 *Wils. Bac. Ab.* 301. *Salmon* v. *Rance,* 3 *Serg. & Rawle,* 311.

*Lashells,* contra—insisted that no reported case sustained the position that a man's silence would make him liable when otherwise he would not be. It was the duty of the assignee to *ask* the obligors, if they had a defence. Cited *Elliott* v. *Callan,* 1 *Penn. Rep.* 24. *Davis* v. *Barr,* 9 *Serg. & Rawle,* 137. *M'Mullen* v. *Wenner,* 16 *Serg. & Rawle,* 18.

(Peter Decker for the use of John Frytenberger *v.* Abraham Eisenhauer and Henry Bolander.)

The opinion of the court was delivered by

SMITH, J.—This is an appeal from the Circuit Court, held by justice HUSTON, for the county of Union, in April last. The appellant moves this court for a new trial, on the ground that the verdict is against the weight of evidence in the cause, and the law arising from it. In order that the case and the decision of the court may be understood, it may be necessary to state somewhat minutely the prominent facts in the cause, as they appeared in evidence.

*Peter Decker*, about the beginning of April, 1818, purchased from *Frederick Stees*, a farm near Middle creek, in Union county, adjoining lands of *Henry Bolander* and others. This farm consisted of several pieces or tracts of land, all adjoining and making but one plantation.

On the 23d of April, 1818, *Peter Decker* mortgaged this land to *Frederick Stees*, to secure a part of the original purchase money. On the 14th of June. 1819, he sold and conveyed to *Abraham Eisenhauer*, a son-in-law of *Henry Bolander*, twenty-seven acres and one hundred and fourteen perches of the land covered by the mortgage, for the consideration of one thousand and seventy-seven dollars and seventy-three cents, a small part of which, to wit, about one hundred and thirty dollars was paid in cash. For the residue, (upwards of nine hundred dollars,) *Eisenhauer* gave nine single bills, (the subject of this suit,) with *Henry Bolander* as security. *Abraham Eisenhauer* took possession of his purchase, and remained thereon, until sometime in 1829, when the mortgage was put in suit, judgment recovered, and the said twenty-seven acres and one hundred and fourteen perches, were sold to *Barbara Mourer*, a daughter of *Henry Bolander*, for four hundred and ninety dollars.

Sometime before the 1st of July, 1820, (the precise time does not appear from the evidence,) *John Frytenberger* went to live with *Peter Decker*, and loaned him three hundred pounds. He did not remain long with *Decker*, but being dissatisfied, went to *Henry Bolander's*, and while he was living there, *Eisenhauer* and *Bolander* both told him there was a mortgage against *Decker*. *Peter Decker* swears, (and he is not contradicted,) that *Eisenhaur* knew of the mortgage to *Stees*, when he purchased the twenty-seven acres and one hundred and fourteen perches, and in consequence of it, insisted upon having a good and sufficient bond of indemnity; that a bond of indemnity was accordingly executed and left with the deed; that *Eisenhauer* was not satisfied with the bond, because bail was not in it, but took *it*, together with the deed, gave his bills as above mentioned, and about six years afterwards said he had burnt the bond of indemnity.

On the 1st of July, 1820, *Decker, Frytenberger, Eisenhauer,* and *Bolander* met together, when *Decker* assigned the single bills in

(Peter Decker, for the use of John Frytenberger, *v.* Abraham Eisenhauer and Henry Bolander.)

question to *Frytenberger*, in part satisfaction of the three hundred pounds, which he had borrowed of him. *Henry Bolander* wrote three of the assignments himself; at this time or before, neither *Bolander* nor *Eisenhauer* intimated that they had any grounds of defence; and *Frytenberger*, on being asked by *Decker*, why he pressed him so, answered, that it was because *Eisenhauer* and *Bolander* said there was a mortgage against him. There was no evidence whatever that *Frytenberger* knew or had heard that the twenty-seven acres, sold to *Eisenhauer*, were encumbered, or that the single bills in question were given for that land.

The obligor cannot be compelled to pay a bond, or single bill, given on the purchase of land, the title to which proves to be bad: although the assignee is in no better condition in general than the obligee, yet if the obligor has promoted and encouraged the assignment, the case is different. This distinction was fully recognized by the learned judge before whom the cause was tried, but it would appear that it was not regarded by the jury. It therefore becomes necessary, in order to prevent injustice, to set aside their verdict and grant another trial. The defendants say, they ought not to pay the single bills, because they were given for the purchase money of land incumbered by a mortgage, for which it was eventually sold. The appellant, however, replies, that although this would have availed you as respects *Decker*; yet as you stood by, and saw him assign these bills to me for a valuable consideration, without informing me of the defect of title, as you, on the contrary, carefully concealed it from me, and assisted in preparing the assignments, your defence in the present action is inequitable and unjust. In *Rudy and wife* v. *Wenner*, 16 *Serg*, & *Rawle*, 21, justice Rogers, in delivering the opinion of this court, says, that if, before the assignment, the assignee calls on the obligor, and informs him, that he is about to take an assignment of his bond, and the obligor acknowledges it is due, without any allegation of defence, he shall not be permitted to take defence against the assignee. And this whether his silence proceeds from *ignorance or design*. The present chief justice, in *Davis* v. *Barr*, 9 *Serg*. & *Rawle*, 141, says, " that to exclude all transactions between the original parties it is necessary, that it should appear the assignee took the assignment at the instance of the obligor, or at least, that the latter stood by with full knowledge of his rights, and without disclosing them. Now in this case, we find, that both *Bolander* and the other defendant, *Eisenhauer*, whilst *Frytenberger* lived with the former, knew of the incumbrance; *Decker* swears, that when he sold the twenty-seven acres, *Eisenhauer* knew of the mortgage to *Stees*, and for that reason, insisted on having a good and sufficient bond of indemnity, although to an entire stranger, it might appear uncertain, from the face of the mortgage as written, whether the

(Peter Decker, for the use of John Frytenberger, *v.* Abraham Eisenhauer and Henry Bolander.)

land sold, was included in it, and it is said, without the aid of a draft, it cannot be ascertained, yet, it seems to us, that *Eisenhauer,* at least, if not *Bolander,* must have been acquainted with the extent of the mortgage.. This farm belonged to *Frederick Stees,* who had long resided in that neighborhood, it adjoined *Henry Bolander's* farm, who had also resided there a long time. *Decker* bought in 1818, and sold to *Eishenhauer* in 1819; and as it was a cash sale, it is reasonable to suppose, both *Eishenhauer,* and his father-in-law, would make inquiry, either of Mr. *Stees,* or at the recorder's office, respecting the title, before they purchased, to say the least of it, they had every motive and opportunity to inform themselves; and *Decker* swears positively, that he told *Eishenhauer* of the mortgage, who in consequence of it, required a bond of indemnity. With this knowledge, they, *Decker* and *Frytenberger,* on the first of July, 1820, met together, and *Decker* assigned the single bills to *Frytenberger,* in part satisfaction of the three hundred pounds. During the whole transaction, not a whisper is heard or hinted as to a defence: and the mortgage, though well known to one, if not to both of the defendants, was never mentioned; good faith to *Frytenberger* required them to speak out at this time; instead of which, they are not only silent, but by their conduct actually promote the transfers. Under such circumstances, this court is constrained to say, as it did in the case of *Stannard* v. *Callan,* 1 *Pen. Rep.* 31, that the conduct of the obligors, whether it proceeded from ignorance or design, must bar them from setting up a defence, with any hope of success, against *Frytenberger,* the equitable assignee. I am of the opinion, that by their silence, when they ought to have spoken, and by their whole conduct when assembled on the 1st of July, 1820, they promoted and induced the assignment, and cannot now, in justice and reason, refuse to pay the single bills. Under all the circumstances, we are of the opinion, the cause ought to be reheard; and therefore set aside the verdict, by reversing the judgment, and granting a new trial.

HUSTON, J.—It often happens that judges differ in opinion as to a particular case, much oftener than on general principles. The court in granting new trials, ought to be very careful in their statement of facts, for it is read to the jury, and by them, too often, considered as evidence of such facts. I say this, because in the statement of the facts of this case by the judge, there is much which was not proved so strongly as here stated; some things not proved at all, and it is said a point was not contradicted, which was the turning point in the cause, and which, certainly, the jury found to be different from what is here assumed. The cause turned on whether *Hochenbury* or *Decker,* was to be believed; or whether *Bolander* knew of the mortgage, when the bonds were assigned; and the cause was left to the jury on those facts. I heard the testimo-

(Peter Decker, for the use of John Frytenberger *v*. Abraham Eisenhauer and Henry Bolander.)

ny, observed the witnesses, their manner, and considered their situation and interest, and I was perfectly satisfied with the verdict, and that it was not contrary to the evidence given; though it might be wrong, if statements of counsel were any evidence at all.

New trial granted.