EUGENE H. PEARSON v. DANIEL HARDIN, IMPLEADED WITH LOUIS D. SANBORN.

*Bills and notes—Alteration—Evidence—Estoppel—Pleading—Statute of frauds.*

1. Where a plaintiff can recover only on the ground of estoppel, such estoppel constitutes a distinct cause of action, and must be specially pleaded; citing *Gooding v. Underwood*, 89 Mich. 187.

2. In a suit by the purchaser against the maker and indorser of a promissory note, the indorser denied its execution under oath, and gave notice that the amount of the note had been raised since the indorsement. An expert witness testified that the body of the note and the signature were in the handwriting of the maker; that the indorsement was the signature of the indorser; that the note had the appearance of having been all written at one time, and by the same pen, ink, and hand; and that, in his opinion, it was so written. And it is held that the note was properly received in evidence, to be scrutinized by the jury, and form the basis for a verdict, if found to be genuine.

3. The plaintiff testified that he purchased the note from the maker, and paid him with a bank check, which was admitted in evidence, against the objection of the counsel for the indorser. And it is held that it was necessary for the plaintiff to prove his title to the note; and the circumstances of the purchase, including the amount paid, having been admitted without objection, the check, which was a part of the transaction, and which tended to corroborate the alleged purchase, was admissible, and none the less so because the indorser did not care to controvert the fact of such purchase.

4. The indorser testified that, at the time he indorsed the note, he also indorsed two other notes for the same amount. And it is held that the further testimony that the latter notes were raised the same as the one in suit was properly excluded.

5. The indorser testified on cross-examination that sufficient spaces were left before the figures in the margin representing the original amount of the note, and the words in the body of the note representing the same sum, for the insertion of the figure and word, respectively, used in raising the note. And it is held that the further questions, why he did not put marks in, so that the spaces could not be filled, and if he did not know that it was ordinarily done, and if he did not care whether it was left in a condition so that it could be changed, were within the range of legitimate cross-examination.

6. The purchaser of a note which had been raised from $500 to $3,500 sued the maker and indorser. The indorser defended on the ground of the forgery. To meet this defense the plaintiff testified that, after he purchased the note, he had an interview with the indorser, and stated to him that he had taken a $3,500 note of the maker, indorsed by the indorser, to which the indorser replied that he did not remember indorsing a note for that amount, but that, if his name was on the back of it, it was good, and would be paid, and asked when the note was due, which information the plaintiff could not then give, but did 12 days later, when the indorser said he was glad that the plaintiff had the note, and wanted him to take other paper, but stated that he should indorse no more paper for the maker. And it is held that the indorser was not estopped from making his defense, and that a verdict should have been directed in his favor.

7. The note being in writing, and signed by the indorser, and the

estoppel, if one exists, going to the identity of the writing, and precluding the indorser from denying its genuineness, an objection that the effect of the alleged estoppel is to do violence to the statute of frauds is untenable.

8. The following general propositions are summarized from the opinion of Chief Justice HOOKER:

*a*—The doctrine of estoppel *in pais* had its origin in willful misrepresentation, but, under the genial influence of courts of equity, the rule has been much extended, and to-day includes mistaken and ignorant misrepresentation, and even silence, whenever a clear duty to know and speak the truth exists.

*b*—The modern decisions have established the rule that the purchase of an obligation to pay money, in consequence of a statement by the obligor that he is liable to pay it, will give rise to an estoppel, and preclude him from setting up a defense to a suit brought for the benefit of the purchaser, though it might have been good against the assignor; and it has been held sufficient if the language used is such as to lead the assignee to believe that the debt is valid.

*c*—The doctrine of the federal courts is to the effect that in order to constitute an equitable estoppel, such as will prevent a party from asserting his legal rights to property, there must be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud; citing *Henshaw v. Bissell*, 18 Wall. 255; *Brant v. Iron Co.*, 93 U. S. 326; and there is nothing in *Truesdail v. Ward*, 24 Mich. 117, and *Heyn v. O'Hagen*, 60 Id. 154, that does violence to these decisions, which state the law correctly.

Error to Saginaw. (Edget, J.) Argued February 7, 1893. Decided April 21, 1893.

*Assumpsit.* Defendant Hardin brings error.     Reversed. The facts are stated in the opinion.

*D. P. Foote* (*McKnight, Humphrey & Grant,* of counsel), for appellant, contended:

1. The denial of the execution of the note put in issue not only the signature, but the due execution of the paper sued upon,

and put plaintiff to proof of both; citing *Hunter v. Parsons*, 22 Mich. 103; *McRobert v. Crane,* 49 Id. 486; *Lincoln v. Lincoln,* 12 Gray., 45; *Bank v. Burns,* 129 Mass. 596; 2 Pars. Notes & Bills, 575-577, and cases cited; and the burden of proving it to be genuine was cast upon the plaintiff; citing *Mine v. Bank,* 44 Mich. 344; *Bank v. Ortmann,* 48 Id. 419; *Haight v. Arnold,* Id. 512; *McRobert v. Crane,* 49 Id. 483.

2. The only effect of the introduction of the check in evidence would be to show that plaintiff was a *bona fide* purchaser for value, which was not in issue, the question being, is the instrument sued upon a forgery?

3. A *bona fide* holder of forged or altered paper cannot maintain a suit upon it; citing 2 Pars. Notes & Bills, 571, 580, 581; and an alteration of the amount named in a bill or note will render it void in the hands of a *bona fide* holder, even though the alteration cannot be detected by the closest scrutiny; citing *Holmes v. Trumper,* 22 Mich. 427; *Bradley v. Mann,* 37 Id. 1; *Aldrich v. Smith,* Id. 471; *Angle v. Insurance Co.,* 92 U. S. 330; *Fay v. Smith,* 1 Allen, 477; *Wade v. Withington,* Id. 561; *Ives v. Bank,* 2 Id. 236; *Bank v. Stowell,* 123 Mass. 196; *Bank v. Burns,* 129 Id. 596; *Fordyce v. Kosminski,* 49 Ark. 40; *Coles v. Yorks,* 28 Minn. 464; *Bank v. Shaffer,* 9 Neb. 1; *Burrows v. Klunk,* 70 Md. 451; *Montgomery v. Crossthwait,* 90 Ala. 553; *McCoy v. Lockwood,* 71 Ind. 319; *Waterman v. Vose,* 43 Me. 504; *Bank v. Winchester,* 43 Conn. 391; *Wood v. Steele,* 6 Wall. 80.

4. In support of the right to introduce the other notes in evidence, counsel cited *People v. Marion,* 29 Mich. 38; *Perkins v. People,* 27 Id. 386; and as to what is admissible as a part of the *res gestæ,* 1 Whart. Ev. §§ 258, 259; *Beaver v. Taylor,* 1 Wall. 642; *Bank v. Kennedy,* 17 Id. 24.

5. The court erred in permitting Hardin to be interrogated as to why he did not put a mark in the blank spaces in the note, and as to whether it was not the custom so to fill them in; citing *Holmes v. Trumper,* 22 Mich. 434; *Miller v. Finley,* 26 Id. 251; *Bradley v. Mann,* 37 Id. 4; *Mine v. Bank,* 39 Id. 653; *Aldrich v. Smith,* 37 Id. 471; *Bank v. Stowell,* 123 Mass. 196; *Burrows v. Klunk,* 70 Md. 451; *Fordyce v. Kosminski,* 49 Ark. 40.

*Hanchett, Stark & Hanchett,* for plaintiff, contended:

1. The note was entitled to be admitted in evidence for the con-

sideration of the jury upon the evidence introduced; citing
*Hunter v. Parsons*, 22 Mich. 96; *Gibbs v. Linabury*, Id. 479;
*Bank v. Seymour*, 64 Id. 59; *Wilson v. Hayes*, 40 Minn. 531;
and it was not only proper, but necessary, for the plaintiff to
show his title to the note, and to that end to show that he
purchased it, and what and how he paid for it; citing *Spicer
v. Smith*, 23 Mich. 96; *Hovey v. Sebring*, 24 Id. 232; *Reynolds
v. Kent*, 38 Id. 246.

2. The evidence shows that Hardin was informed by Pearson of
this note, its date, amount, when due, and of Hardin's indorse-
ment of it, for the purpose of seeing whether the note was
right or not. Mr. Hardin informed him that, if his name was
on the note, it was right, and would be paid. He relied upon
this statement, and was injured by losing his remedy against
Sanborn, which he would have had had Hardin informed him
that he had not indorsed the note. These facts, if found by the
jury, constitute an estoppel against Hardin's defense that he
did not indorse such note, and they authorize the charge of
the court; citing 2 Herm. Estop. §§ 763-765, 770, 772, 773, 775,
1007; *Meister v. Birney*, 24 Mich. 435; *Truesdail v. Ward*, Id.
117; *Heyn v. O'Hagen*, 60 Id. 150; *Vanneter v. Crossman*, 42
Id. 465; *Dann v. Cudney*, 13 Id. 239; *Roberts v. Wilkinson*,
34 Id. 129; *Payment v. Church*, 38 Id. 776; *Tiffany v. Ander-
son*, 55 Iowa, 405; *Bank v. Bank*, 50 N. Y. 575; *Voorhis v.
Olmstead*, 66 Id. 113; *Forsyth v. Day*, 46 Me. 176; *Knights v.
Wiffen*, L. R. 5 Q. B. 660; *Dickerson v. Colgrove*, 100 U. S.
578; *Kirk v. Hamilton*, 102 Id. 68; *Freeman v. Cooke*, 2 Exch.
654.

3. For cases where estoppels *in pais* have been proven when not
pleaded, see *Sebright v. Moore*, 33 Mich. 92; *Davis v. Bush*,
28 Id. 432; *Payment v. Church*, 38 Id. 776; *Heyn v. O'Hagen*,
60 Id. 150.

HOOKER, C. J. Plaintiff brought *assumpsit* on a promis-
sory note, a copy of which was served with the declaration,
consisting of the usual money counts. Defendant Sanborn
did not appear, and his default was duly entered. Defend-
ant Hardin filed a plea of the general issue, accompanied
by a sworn denial of the execution of the note, and notice
that the note was a forgery as to him. .

Plaintiff called a witness familiar with the writing of

both defendants, who testified that the body of the note and the signature were in the handwriting of defendant Sanborn, and that the indorsement was the signature of defendant Hardin. Objection being made to the introduction of the note, upon the claim that it had been raised by defendant Sanborn, after Hardin's indorsement, from $500 to $3,500, the witness testified at length about the appearance of the note, and gave it as his opinion that it was all written at one time, by the same hand, and with the same pen and ink. Upon a renewal of the offer the court admitted the note in evidence, with the remark:

"I will leave it to the jury to determine themselves, upon the introduction of the paper, as to whether the note is in the same condition as when indorsed; as to whether it is the genuine paper of the defendant, or not."

Ordinarily, the admission of the controverted note in evidence has no special significance, beyond the implication that there is testimony, already presented, tending to show its execution, which, together with the appearance of the paper itself, in the absence of any evidence to the contrary, will justify the jury in determining that it is genuine. The pivotal question in this case was, has the note been raised in amount from $500 to $3,500? and the question could not have been tried without the presence and examination of the note. As soon as there was any evidence that the note was written by one and signed by both defendants, and an expert further testified that it had the appearance of having been all written at one time, and by the same pen, ink, and hand, and that in his opinion it was so written, it was properly admissible, to be scrutinized by the jury, and to form the basis of a verdict, if found genuine. There is nothing to indicate that the jury attached any importance to the admission of the note, beyond this.

The plaintiff, testifying, stated that he purchased the note from Sanborn on November 4, and paid him therefor

$3,450.25, with a bank check.    This check was admitted, against objection by defendant's counsel.    It was necessary for plaintiff to prove his title to the note, which was payable to the order of Hardin; and the circumstances of the purchase, including the amount paid, were admitted without objection.    The check was a part of the transaction, and tended to corroborate the alleged purchase.    It was none the less admissible because defendant's counsel did not care to controvert the purchase.

Defendant testified that, at the time he indorsed the note in question, he also indorsed two other notes, and that each of the three was for the sum of $500.    His counsel sought to show that the other two notes were raised to $3,500 and $4,500, respectively, but the testimony was excluded.    This testimony was not admissible.    The only argument that can be made in favor of its admission is that, if Sanborn altered the other two, he probably altered the note in suit.    In other words, a forgery was to be proven by other forgeries.    The circumstances attending the execution of the notes were properly admitted.    The jury were permitted to consider the probability of defendant's indorsing a $3,500 note in addition to the two $500 notes, which probability would not be increased or diminished by the subsequent alteration of the latter.    This also disposes of the sixth assignment of error, as the only effect of the introduction of the two notes would have been to show their alteration, unless, as already intimated, we are to infer one forgery from the proof of another, not connected with it.

On cross-examination the defendant stated that sufficient spaces were left before the figures "500," in the margin, and the words "five hundred," in the body, of the note, for the insertion of the figure " 3 " and the word " thirty," respectively.    The following questions were asked:

" *Q.* Why didn't you put a mark in there, so it could not be filled?"

" *Q.* Well, don't you know that ordinarily it is [done]?"

" *Q.* And you didn't care whether it was left in condition so it could be changed or not?"

It was important to ascertain whether such spaces were left when the note was executed. If not, the note could not easily have been raised, and the probability of its genuineness was greater. Defendant stated unequivocally that such spaces were left, and the questions were within the range of legitimate cross-examination. The language of the court, in overruling the objection, carefully pointed out the bearing of the testimony, and expressly disavowed any purpose to treat the evidence as tending to establish a legal liability, by reason of defendant's negligence in failing to fill such blanks.

The evidence disclosed that, after the purchase of the note, plaintiff had an interview with defendant Hardin, in the course of which he stated to him that he had taken a $3,500 note of Mr. Sanborn, with his (Hardin's) indorsement. Hardin said that he did not remember of indorsing a note for that amount, but that, if his name was on the back of it, it was good, and would be paid. He also asked plaintiff when the note was due, which plaintiff could not then tell, but did later, when defendant said that he was glad that plaintiff had that note, and wanted him to take other paper at that time. He also stated that he should indorse no more paper for Sanborn. Plaintiff's counsel contended that this constituted an estoppel, and the question was left to the jury.

The doctrine of estoppel *in pais* had its origin in willful misrepresentation. Under the genial influence of courts of equity the rule has been much extended, and to-day includes mistaken and ignorant misrepresentation, and even silence, wherever a clear duty to know and speak the truth exists. The modern decisions have established the rule that the

purchase of an obligation to pay money, in consequence of a statement by the obligor that he is liable to pay it, will give rise to an estoppel, and preclude him from setting up a defense to a suit brought for the benefit of the purchaser, though it might have been good against the assignor. *Watson's Ex'rs v. McLaren,* 19 Wend. 557; *Petrie v. Feeter,* 21 Id. 172; *Foster v. Newland,* Id. 94; *Holbrook v. Burt,* 22 Pick. 546; *M'Mullen v. Wenner,* 16 Serg. & R. 18; *Decker v. Eisenhauer,* 1 Pen. & W. 476; *Davis v. Thomas,* 5 Leigh, 1; *Heyn v. O'Hagen,* 60 Mich. 155; *Brown v. Wright,* 17 Ark. 9; *Plant v. Voegelin,* 30 Ala. 160; *Drake v. Foster,* 28 Id. 649; *Powers v. Talbott,* 11 Ind. 1; *Rose v. Wallace,* Id. 112; *Forsyth v. Day,* 46 Me. 176; *Buckner v. Calcote,* 28 Miss. 432.

And it has been held to be sufficient if the language is such as to lead the assignee to believe that the debt is valid, and can be bought with safety.   *Institution v. Littlefield,* 6 Cush. 210.

Again, some courts have held that no estoppel will arise from an admission made in good faith under the influence of a mistaken impression.   *Whitaker v. Williams,* 20 Conn. 98; *Taylor v. Ely,* 25 Id. 250.   In *Mackay v. Holland,* 4 Metc. 69, the maker of an accommodation note was allowed to explain a declaration that it was good by proving that he spoke in ignorance that the debt had been discharged by the payee.   On the other hand, Pennsylvania courts have gone to the extreme of holding that a statement that a note will be paid is equally binding, whether made under a mistaken impression or with a fraudulent design; but the weight of authority hardly goes to that length.

Many cases hold that an estoppel will arise when representations are made recklessly, without knowing or inquiring into the true state of the case.   *Preston v. Mann,* 25 Conn. 118; *Calhoun v. Richardson,* 30 Id. 210; *Dan-*

*forth v. Adams,* 29 Id. 107; *Smith v. Stone,* 17 B. Mon. 168. But it is conceived that this rule cannot apply to a case involving no deceit unless a legal or moral obligation exists, requiring that information be imparted, which may go to the extent of making it a party's duty to obtain information which he may not possess, but which is within his reach. A case in point is where the cashier of a bank certifies a check without ascertaining that the drawer has a deposit. In that case the bank is estopped from show-ing such fact by way of defense, for the cashier owed the duty to the drawee of giving him the truth about the matter, which cannot be excused by reason of negligence. And so we may reiterate the rule that an estoppel exists where non-performance of a clear duty is' shown. The doctrine of the federal courts appears to be in line with this, and is to the effect that—

"In order to constitute an equitable estoppel, such as will prevent a party from asserting his legal rights to property, there must be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as .to amount to con-structive fraud." *Henshaw v. Bissell,* 18 Wall. 255; *Brant v. Iron Co.,* 93 U. S. 326; *Jackson v. Waldron,* 13 Wend. 208.

It has been said that the first step in charging any one with the ill effects of a false impression occasioned by his words or acts is to show that he was aware of the results to which it would lead if not corrected. *Hill v. Epley,* 31 Penn. St. 331. Hence, no estoppel can grow out of an answer to a question put incidentally, without communi-cating the intention of the person who asks it to be guided by the reply (*Pierce v. Andrews,* 6 Cush. 4), because under those circumstances there is no actual or constructive fraud. There is nothing in the cases of *Truesdail v. Ward,* 24 Mich. 117, and *Heyn v. O'Hagen,* 60 Id. 154, that does

violence to these decisions of the federal court, which, in our opinion, state the law correctly.

It remains to inquire whether this record justifies us in saying, as a matter of law, that neither actual nor constructive fraud was deducible from it. According to plaintiff's testimony, he bought the note November 4, and his first interview with defendant Hardin was November 12, when Hardin told him that he did not remember of indorsing a note for $3,500, but that, if his name was on the back, it was good, and would be paid. Hardin at this time looked for a memorandum, but after search said that he had none. He asked the plaintiff to let him know when the note would mature. This the plaintiff did on November. 24. The plaintiff states that "he had no suspicion of the validity of the note,—not the slightest,—yet he mentioned that he had it for the purpose of seeing whether it was all right, or not."

We cannot believe that what passed can justly be held to amount to an estoppel. It was more in the nature of incidental talk. If the statement, "I have Sanborn's note for $3,500, indorsed by you," can be construed as a question, the answer was as well calculated to arouse suspicion upon the part of plaintiff as the statement was to disturb the defendant. Yet he gave no sign, and when asked to give the date, and duration of the period it was to run, he waited 12 days before doing so. The statement relied on is that defendant did not remember indorsing a note for that amount, but, if his name was on the back of it, it was good, and would be paid; and again, 12 days later, when convinced by plaintiff's statement alone that he had such note, he told him that he was glad that he had it. The inference naturally drawn from the testimony is that plaintiff thought he had defendant's note for $3,500. Defendant could not recollect giving it, but was not sure, and

told the plaintiff so, but said, if he had indorsed such a note, it was good, and would be paid. Neither party suspected Sanborn, and probably forgery was the furthest thought from their minds. We cannot hold that the defendant owed a duty to the plaintiff to suspect a forgery because he did not recollect of indorsing a note for the amount of $3,500. Nor was it gross negligence to forget about the matter, under the circumstances. Had plaintiff said that he was about to purchase the note, and inquired about its genuineness, or had he given the defendant to understand that he had any special reason for wanting to know, defendant might have been called upon to make an investigation; but plaintiff's conduct, and the fact that he had already bought the note, were well calculated to allay suspicion, rather than to create the impression that a duty devolved upon Hardin to be certain about the matter. If the plaintiff was, in good faith, seeking information about the genuineness of the note, he should, after being told that defendant could not remember such, have shown it to the defendant, and asked explicitly for information; but he chose to rely on what had passed. He cannot be allowed to rely upon a part, but must act upon the whole conversation, which gave him to understand that defendant would pay the note if he had signed it. Unfortunately, it turns out to have been forged, to the surprise of both. He did not say that he would pay a forged note, or a raised note; and, instead of telling plaintiff that he had indorsed a $3,500 note, it was the plaintiff who was asserting the fact, and defendant was expressing doubts. We fail to find in defendant's conduct that gross negligence that constitutes constructive fraud. To hold that the facts in this case constitute an estoppel, merely because defendant allowed plaintiff to convince him that he had indorsed such a note, would be to make the doctrine of estoppel a sword, and not a shield, which is its proper

office. The jury should have been instructed to render a verdict for the defendant.

The cause must be reversed for another reason. If this note was forged, plaintiff could recover only upon the ground of estoppel. Under the rule laid down by Mr. Justice GRANT in the case of *Gooding v. Underwood*, 89 Mich. 187, 190, this estoppel constituted a distinct cause of action, which should have been declared upon.

We think there is no force to the claim of defendant's counsel that the effect of this estoppel is to do violence to the statute of frauds. The note is in writing, and signed by the party to be charged. The estoppel, if one exists, goes to the identity of the writing, and precludes defendant from denying its genuineness. The admissions of a defendant are always admissible to prove the genuineness of a contract. Sometimes admissions become conclusive by way of estoppel.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.