LANG *v.* LUNDY.

1. CORPORATIONS—RIGHTS OF STOCKHOLDERS—OWNERSHIP OF STOCK —NUMBER OF HOLDERS REQUIRED.

Acquirement by one party of all or practically all the stock in a private corporation does not divest it of its legal existence, although by reason of insufficiency in the number of stockholders it became dormant as a corporate entity.

2. SAME — CREDITOR'S SUITS — BILL IN AID OF EXECUTION — EVIDENCE—BURDEN OF PROOF.

In an action of replevin involving the validity of an execution levy against a corporation which had become dormant because of the transfer to one holder of all or practically all the stock, the burden of proof was upon the sole stockholder and plaintiff to establish by a pre-

ponderance of the evidence that an assignment to him from the corporation of property seized by the officer under the writ was legal and valid.

3. SAME—ASSIGNMENT—STOCKHOLDERS—OFFICERS.

Where plaintiff became the owner of all the stock in a corporation except a small number of shares held by one party, and thereafter procured the election of his attorney as president, who executed to plaintiff an assignment of the property of the corporation and the attorney had no financial interest in the corporation but was a nominal stockholder, there was not a sufficient transfer of the property of the company to invalidate a levy by a judgment creditor upon the transferred assets.

4. ESTOPPEL—ASSIGNMENT—FRAUDULENT CONVEYANCES.

Where the owner of substantially all the stock in a corporation wrote to a creditor stating that he was assignee of the property of the company and that he would see that the creditor was not defeated in his rights and caused him to forbear the enforcement of his claim so as to lose rights in the property by reason of plaintiff's action, and where the stockholder also wrote that he would meet complainant and settle with him, he was estopped in equity from attempting to enforce any alleged rights under an assignment from the corporation to himself of its property.

5. SAME—EQUITY—JURISDICTION—REMEDY AT LAW.

In an action of replevin the court is authorized to enforce an estoppel *in pais* in the nature of an equitable estoppel and it need not be specially pleaded.

Error to Cass; Des Voignes, J. Submitted January 11, 1915. (Docket No. 51.) Decided April 6, 1915.

Replevin by Walter W. Lang against Edwin T. Lundy to recover certain timber and property seized upon an execution. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Asa K. Hayden,* for appellant.

*Chester E. Cone,* for appellee.

STEERE, J. This action in replevin grew out of a levy by defendant in his official capacity as under-sheriff, made under authority of a process issued in an action brought against the Sheffer Lumber & Timber Company, a corporation, by Francis A. Judie to recover a balance which said company owed him for timber he had sold to it. While Lundy is the nominal defendant by reason of his official action in seizing the lumber, Judie is the real defendant in interest, and the actual issue is between him and plaintiff, Lang, who replevied said lumber claiming title and prior right thereto through an assignment from said company. It is conceded that before the instant case was tried Judie had obtained a judgment against the Sheffer Lumber & Timber Company for a balance due him on timber he had sold it, amounting, with costs, to $902.87. The lumber levied upon was stock manufactured by said company in the course of its business from timber it had purchased from Judie or others for that purpose. The exact date of Judie's judgment is not disclosed in this record, neither is the nature of the process under which the officer seized the lumber made clear; the court designating it as an execution levy after judgment, and counsel as a seizure under an attachment. Which it was, however, is apparently unimportant, as it is undisputed that a lawful seizure was made if the lumber belonged to said company, and this action is based on the claim that it did not, but was the independent and distinct property of Lang. At the conclusion of the evidence on trial of the instant case, counsel for plaintiff requested a directed verdict in his favor, and counsel for defendant, waiving return of the property, requested a directed verdict against plaintiff and his bondsmen for the conceded amount of Judie's judgment (which was less than one-fifth of the appraised value of the lumber seized) ; counsel for each side

urging that the case involved no material issue of fact for a jury and the court should dispose of the same as a matter of law. A verdict was directed in favor of defendant for $902.87, being the amount of the judgment in *Judie* v. *Sheffer Lumber & Timber Co.*, to satisfy which the levy in question was made.

The points relied upon by plaintiff, as stated in his counsel's brief, are:

"I. That the court erred in not instructing a verdict for the plaintiff at the close of the testimony for the following reasons: (1) That the assignment to plaintiff was uncontradicted, valid, and passed the property covered thereby, including the lumber in question, to him; (2) that the defendant could only attack the assignment on the ground that it was fraudulent; or (3) that it was an assignment for the benefit of creditors, and neither defense could be made because they had not been pleaded.

"II. That the court erred in instructing a verdict for the defendant for the same reasons."

The Sheffer Lumber & Timber Company was organized as a corporation on the 13th of November, 1912, under Act No. 232, Pub. Acts of 1903, with a capital stock of $15,000 divided into 1,500 shares of the par value of $10, of which H. F. Griffin had ·890 shares, B. F. Sheffer 600 shares, and Miss M. A. Carney, their stenographer, 10 shares, making the requisite number of persons to incorporate. Its office and place of business were at Kalamazoo, Mich., where it entered upon the business of purchasing timber and manufacturing the same into lumber. The articles of incorporation show that its capital stock was all paid in, consisting of $3,000 in cash and $12,000 in other property, mostly logs and timber. Timber was purchased by the company from various owners in the vicinity of Kalamazoo, and amongst others from Judie, with whom a contract was made shortly after the company was organized, in 1912. About the time

of its organization plaintiff loaned said company $3,000 at the solicitation of Griffin, and not long thereafter appears to have become quite actively interested in its affairs. At what date he became a stockholder is not disclosed, but before June 13, 1913, he held all the 1,500 shares of stock of the corporation, except the 10 shares held in the name of Miss Carney, the stenographer, who was one of the original incorporators. H. K. Nicolls, who had charge of the books and looked after the general operations of the company, states that he was employed for that purpose by plaintiff in January, 1913, shortly after the organization of the company. Griffin and Sheffer, two of the three incorporators, and who, together, originally had all but 10 shares of the capital stock, dropped out of the organization and transferred all their stock to plaintiff at some time before June 13, 1913; Griffin disappearing with some money belonging to the company, as plaintiff testified. The dates of their retirement are not disclosed, though the circumstances indicate that their connection with the concern was of comparatively short duration, for Judie and others who sold timber to the company testify to receiving payments from plaintiff by checks of the company signed by him, personally, or as secretary and treasurer, during the early part of 1913, some as early as January, in which month he hired Nicolls to take charge of the books and look after operations, and on April 29, 1913, plaintiff wrote Judie, personally, in answer to a letter addressed to the company urging payment, in part as follows:

"Yours of recent date on hand addressed to the Sheffer Lumber & Timber Company, and will say that as assignee of this company I am trying to straighten up all matters in an honest, peaceable manner and am now trying to do the same with you. While Mr. Sheffer is not in any way connected with this company he has kindly consented to call on you as soon

as possible and come to some mutual agreement satisfactory to you.   *   *   *   I do not want you to feel that you are going to be beaten out of a cent as long as I am interested.  I am very sorry we have had so much delay but I assure you I am very sorry and it is no fault of mine and will hurry everything along just as fast as I can, and will see that you get everything you have coming."

On May 29, 1913, Judie wrote plaintiff asking for money due him for logs, and on June 9, 1913, Nichols replied for plaintiff as follows:

"Dr. Lang wishes me to advise you that just as soon as he can, possibly, he will be down to see you and settle up the outstanding account.  We are getting our business settled up as fast as possible, and will be sure to call on you in the near future.  With kindest personal regards, we remain, very truly yours.

"SHEFFER LUMBER & TIMBER CO.,
"By HUGH K. NICOLLS."

Plaintiff's claim of distinct ownership of and right to replevy the property seized is predicated on an alleged assignment of it made to him by the company on June 14, 1913, at a time when, as he describes it, he was "practically the whole company."  Just at what time Griffin and Sheffer assigned their stock to plaintiff he was unable to say, but he testifies that hoping to "carry on the business to clear some of the money for myself that I had put into it, and I knew that it was necessary to have three stockholders," he went to an attorney named Grace, who had his office in the Majestic building in Chicago, and asked "if he would take a little stock to make a third party."  Grace testified that, as attorney for plaintiff and to protect his interest, he became a "nominal stockholder" to the extent of 10 shares and accepted the position of president of the company; that he did not then, nor at the time of the trial, know the capital stock of the corporation, when it was organized, never

saw its articles of incorporation, did not know what assets it had or what debts it owed, nor whether it was insolvent or not, did not care, and it did not concern him. After Grace accepted the stock, they proceeded to revive the moribund corporation by holding a meeting at which Grace was elected president, Miss Carney vice president, and Lang secretary and treasurer. Thereupon a resolution was at once introduced and unanimously carried authorizing the president to give Lang a note of the corporation for $11,890 and assign the assets of the company to him to secure payment of said note, with full power to sell and dispose of the same "for the purpose of reimbursing himself to the amount of said note and the accrued interest," reciting that the action was in consideration of moneys loaned from time to time to the Sheffer Lumber & Timber Company to enable it to carry on its business.. On the following day Grace executed said note and assignment accordingly. The assignment was never filed or recorded, and no copy of the resolution or record of these meetings was produced; it being claimed they had been lost.

An annual report of said Sheffer Lumber & Timber Company filed with the secretary of State was made and sworn to by plaintiff purporting to give its condition December 31, 1912. It shows that all the debts owing by the corporation were but a single item of $3,000 unsecured, and assets amounting to $14,500 including $2,500 cash on hand. Lang is shown to have had 1,390 shares of stock, and the officers are given as Grace president, Carney vice president, and Lang secretary-treasurer. The time of filing this document is not disclosed, but its manifest inconsistencies may perhaps be accounted for by it apparently having been sworn to by Lang on the 21st of August, 1913.

The fact that plaintiff acquired ownership of all, or

practically all, the stock of the company, did not destroy its legal entity as a corporation, nor divest it of legal title to its property, although it thereby became for the time dormant owing to lack of sufficient members and requisite officers to legally conduct its business as a corporation. Plaintiff later revived it into legal form for corporate activity by adding a dummy stockholder and electing a dummy president. His only suggestion of title and right to the property in question is based upon an assignment obtained through that channel. His counsel well presents the controlling question in the point urged that the assignment to plaintiff was uncontradicted, valid, and passed the property covered thereby, including the lumber in question, to him.

The burden of proof is upon plaintiff to establish by a preponderance of evidence that this assignment is valid and did pass the property to him, as between him and the judgment creditor, Judie. A lack of distinct dates and details in matters peculiarly within his knowledge or available to him cannot be supplied by inferences in his favor; but it is shown without controversy that almost from the beginning he was understood by those dealing with the company to be a member of it, that he hired Nicolls for a responsible position with the company, assumed to do business for it both in its name and his own, fairly justifying the inference that he was an important, responsible, and controlling member of the concern, even advising Judie in April, over his own signature, that he was in control as an assignee, and promising that he would hurry everything along and see that Judie got all that was coming to him. So far as the record discloses, he did all these things without any legal authority emanating from the corporation itself by proper official action and at a time when, according to portions of his own conflicting testimony, he was

not an officer, nor even a stockholder, of the lumber company.

Of the corporation and his relations with it, plaintiff testifies in part as follows:

"I couldn't say how many shares there were. $10 was the par value of them, I think. I think Miss Carney has 10, Grace has 10, the rest I have on assignment, assigned to me. I am practically the whole company. I know nothing about whether the company had cash and timber on hand or not when it was organized. I don't think there has been any change in the capital stock. As secretary and treasurer, it has been my duty to make reports to the secretary of State, and I have done so. When I made such reports, I had to have knowledge of the condition of the company, and the reports were truthful. * * * I bought no stock. The stock was assigned to me. I got my stock from Sheffer and Griffin. * * * After they had organized and started, I loaned them money. So far as I know, all the stock is paid up. When I made the annual report I made, the company was insolvent. My report will show the insolvency." (His only report shows but $3,000 indebtedness and assets amounting to $14,500.) "I was acting as secretary and treasurer of the company in January, 1913. I was elected to that position in June, 1913. I did make some checks signing my own name personally, not the Sheffer Lumber & Timber Company, made some checks to individuals in payment and taking security from the company in payment of these deals. * * * If I am not mistaken, I signed checks at that time 'Sheffer Lumber & Timber Co., W. W. Lang,' and also 'Acting Secretary and Treasurer,' and probably some of them may not have had 'Acting' on."

Plaintiff also stated in one portion of his testimony that he had a chattel mortgage upon the assets of the company to secure money he loaned it, which was never filed, and which his own counsel said at the trial he had not before heard of, but later in his testimony said "it would be better to say" an "assignment" of some "contracts which are not in existence

now," and he did not know where the assignments were. Further testifying, he said:

"I meant, by saying that I was assignee, that owing to the note that I had for $3,000 backed by a mortgage of all the assets of the company was past due, and I consulted an attorney at the Bank building, the same building I am in, and he advised me to consider that an assignment. I can't say just when it was that Sheffer and Griffin made an assignment to me of their stock. It was before the time that Mr. Grace became president. There was no assignment to me or transfer to me to secure the note until Mr. Grace became president."

The acquisition of practically all stock of this company by plaintiff, thus reducing the stockholders below the minimum number requisite to organize and officer it as a corporation, while it did not dissolve or divest it of the legal title to its property, suspended its powers and the exercise of its franchise rights until the stock was again distributed in good faith among sufficient owners to meet the statutory requirements, and its powers of corporate activity revived by proper organization and election of officers to manage its business. In the meantime it retained, however, an artificial personality distinct from its stockholders, and its assets were holden for its lawful debts.

Just when this corporation reached that condition of suspense is not shown, and plaintiff states he does not know. It is fairly inferable that it was before his letter of April 29th, when he claimed to be in charge as assignee. He continued thereafter to transact business in the name of this dormant corporation as though it was active and operating with corporate vitality according to law. He could not thereby impose upon it, while in that condition and incapable of corporate action, any indebtedness arising from his management of the business in its name. Owning and controlling this corporation in fact and effect, if

not in law, by reason of his ownership of its stock, he proceeded to use its abstract corporate entity as an instrument to get direct title to its assets against other creditors by nominally, and for that particular purpose, transferring 10 shares to his attorney, electing him president and having him as such sign the assignment asserted here against the levy of a creditor of the corporation upon its property to collect a valid corporate' debt.

"The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth." *Seymour* v. *Cemetery Ass'n,* 144 N. Y. 333 (39 N. E. 365, 26 L. R. A. 859).

It is obvious that Grace had no actual interest in this corporation as a *bona fide* stockholder. His only interest or concern in relation to it was as attorney, to assist his client. Beyond that the corporation as such was nothing to him, and he so states. He was but a nominal stockholder and a figurehead president, made so at the behest of his client for the particular purpose of making this assignment to his client, with no thought of the rights or interests of the corporation of which he assumed to be chief officer. However near the proceeding on its face came within the letter of the law, in the spirit of the law it approximated a sham.

The Sheffer Lumber & Timber Company is not, as such, a party to this litigation, and protection of its individual corporate rights is not involved. The contention is between two parties claiming, each against the other, a right as creditors to certain of its assets. Judie as an outside judgment creditor claims under a levy, and Lang, owning practically all its stock and "Practically the whole company," claims under an assignment from the company. Judie did not, and does not, seek to hold Lang personally liable as the sole owner or principal stockholder of the corpora-

tion, nor by reason of the promises made in writing to pay what was due him for timber sold the company. He is seeking to collect it by a levy on the property of the corporation, whose alleged corporate action under Lang's direction, taken after Judie's claim was due and payment demanded, is now interposed in Lang's behalf to defeat the levy. Judie was manifestly pressing his claim and apparently in a position to protect it and enforce payment when Lang wrote him, on April 29th, claiming to be assignee of the company, proposing peaceful methods and forbearance, giving assurance that Judie would not be beaten out of a cent while Lang was interested, and promising to see that he got everything due him. That Judie relied on these representations and assurances, forbore, changed his conduct, and thereby altered his condition, as subsequently developed, is fairly shown. On May 29th, just a month after receiving that letter, he wrote Lang stating that parties he owed were waiting for their money and urgently asked payment of what was due him for logs. On June 9th a letter, claiming to be at Lang's dictation, signed "Sheffer Lumber & Timber Co., by Hugh K. Nicolls," advised Judie that Lang would be down as soon as he possibly could and settle his account. Having thus quieted Judie temporarily, Lang, on June 13th, went to his attorney Grace and created him a "nominal stockholder," followed by proceedings resulting in the assignment on which he relies, executed, by Grace as president, on June 14th. Courts of law have jurisdiction to recognize an equitable estoppel *in pais* (*Barnard* v. *Seminary,* 49 Mich. 444 [13 N. W. 811]), and the same need not be especially pleaded (*Dean* v. *Crall,* 98 Mich. 591 [57 N. W. 813, 39 Am. St. Rep. 571]).

The salient features of this record as disclosed by plaintiff's own evidence, as well as lack of evidence

185 Mich.—26.

which if in existence was apparently at his command, sustain the conclusion of the trial court that the alleged assignment on which plaintiff relies cannot be recognized as valid to establish in him a paramount title as against Judie's levy.

The judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.