KENNEDY *v.* LYNCH TIMBER CO.

1. EVIDENCE—PAROL EVIDENCE RULE—WRITTEN CONTRACTS.
    Testimony of agreements made after the execution of a written contract does not infringe the rule excluding parol proof varying the terms of a written agreement.

2. CONVERSION—DEFENSES—BONA FIDE PURCHASERS.
    In an action for the conversion of certain ties which defendants secured from C. on their agreement to later replace them with a like number, and title to which had

passed to plaintiff under his contract of purchase from C., defendants cannot be protected in their conversion upon the theory that they were *bona fide* purchasers; the ties not carrying with them the properties of negotiable paper.

3. EVIDENCE—TESTIMONY OF WAIVER OF TERMS IN ORIGINAL CONTRACT ADMISSIBLE—PASSING OF TITLE.

Testimony that the terms of the original contract between plaintiff and C. in regard to inspection and advance payment were waived after its execution by a subsequent agreement, *held*, to justify a finding by the jury that title had passed notwithstanding the terms of the original contract in said respects were not carried out.

4. CONVERSION—ESTOPPEL—TRIAL—EVIDENCE OF ESTOPPEL INSUFFICIENT TO CARRY QUESTION TO JURY.

In the absence of any testimony showing any act of defendants in reliance upon the acts of plaintiff which are claimed to operate as an estoppel, the trial court properly refused to submit the question of estoppel to the jury.

5. ESTOPPEL—PLEADING—ESTOPPEL MUST BE SPECIALLY PLEADED.

Although, previous to the passage of the present circuit court rules, the defense of estoppel was available under plea of the general issue, without special notice thereof, under Circuit Court Rule No. 23, § 2, the defense of estoppel is not now available under plea of the general issue unless notice thereof is given.

6. CONVERSION—EVIDENCE—OVERWHELMING WEIGHT OF EVIDENCE.

Where, upon the main case, plaintiff's testimony preponderates, but as to certain ties shipped by defendants at a later date, the testimony is overwhelming that they were purchased by defendants from another person and therefore belonged to them, the judgment in favor of plaintiff is affirmed, on review, conditional upon his remitting an amount therefrom disclosed by the record as equaling the value of said ties.

Error to Chippewa; Fead (Louis H.), J.    Submitted April 25, 1924.    (Docket No. 36.)    Decided June 2, 1924.

Case by William L. Kennedy against the Lynch Timber Company and another for the conversion of

certain timber products.     Judgment for plaintiff.
Defendants bring error.     Affirmed, conditionally.

*McDonald & Kaltz*, for appellants.

*H. L. Parsille* (*T. J. Riley*, of counsel), for appellee.

It is the claim of the plaintiff that on January 21,
1920, he entered into a written contract with George
M. Chandler whereby he agreed to buy and Chandler
agreed to sell from 20,000 to 25,000 ties.     The ties
were then being produced along the Munoskong river
and on the Munoskong bay.     Delivery was to start
May 15th following and be completed August 1st.     He
produced such contract on the trial. ·  It contained
the following provision:

"Payment and Inspection. — It is understood and
agreed that the buyer shall make an inspection of the
ties on the bank of the river and on the shore and ad-
vance about 65% of the contract price, balance to be
paid on completion of contract.     It is further agreed
and understood between the two parties that when
such inspection and advances are made, that the title
to all of said ties is to pass to and be vested in the
buyer."

Mr. Chandler was produced as a witness by defend-
ants.     While not denying contract relations with
plaintiff, he did insist that the contract introduced was
not the one originally signed by the parties but was
one signed a considerable time after that date on the
representation of plaintiff that he had lost his copy,
and that the original contract did not contain the
clause having reference to the passing of title.     He
did not, however, produce his contract although the
contract as originally drawn was executed in duplicate.
Mr. Chandler only got out about 14,000 ties that season
and was unable to deliver them, due to the stage of
the water in the river.     He received an advance of
$5,000.     The next year he got out about 2,500 ties.

It is the claim of the plaintiff that it was agreed that these ties should come under their contract.    About 11,000 ties were inspected and it is the claim of plaintiff that Chandler objected to the inspection and that it was finally agreed between them that without further inspection the ties would run 60 per cent. firsts and 40 per cent. seconds, and would be accepted on that basis.    He also claims that it was also agreed that the advance already made was sufficient.

The ties came down the spring and early summer of 1921.    Some of them escaped, many were recovered and some were lost.    Chandler's booming facilities were not adequate to contain them.    The defendant company was then loading a boat with ties for shipment.    Chandler and defendant Lynch, manager of the company, made an arrangement that the company should take some of the ties Chandler had brought down so as to release some of his booms, the company to later return to Chandler other ties of equal number. The Lynch Company under this arrangement took 5,300 ties brought down by Chandler and shipped them.    They have never been returned; Chandler has been given credit for them by the Lynch Company as a matter of bookkeeping.    On September 2, 1921, Chandler executed to plaintiff a bill of sale of the ties approximating 14,000.    It was in the usual form and recited that the "described forest products belong to said George Chandler."    Plaintiff claims this was given as better evidence of his title.    He had been obliged to pay liens on the property and assumed an indebtedness of Chandler's at the bank of $1,500. Ties were then worth considerably less than they were at the time agreed upon for delivery and in the bill of sale the price was also adjusted.    Plaintiff brought this action for the conversion of the 5,300 ties and 606 other ties to which reference will be made in the opinion.    Defendants pleaded the general issue. Plaintiff recovered judgment which is here reviewed

by defendants upon numerous assignments of error which are, however, grouped under appropriate heads.

FELLOWS, J. (*after stating the facts*).    1. It was permissible for plaintiff and Chandler to make further agreements and stipulations deemed necessary by them as a result of Chandler's failure to get out the full number of ties agreed upon, and his failure to deliver as a result of a dry spring season.    Testimony of their agreement or agreements made *after* the execution of the contract does not infringe the rule excluding parol proof varying the terms of a written agreement.    As between Chandler and the plaintiff it was competent for them to make such agreement or agreements as they saw fit with reference to the ties.    It was competent for them to add to, take from and modify the terms of the written agreement. The ties did not carry with them the properties of negotiable paper.    Defendants can not be protected in their conversion of the ties upon the theory that they were a *bona fide* purchaser.    They placed no reliance on the original contract between plaintiff and Chandler.    Mr. Lynch admits that he knew Chandler was getting out ties for plaintiff but he claims no knowledge of the contents of the contract.    The court committed no error in permitting plaintiff to show arrangements made by him with Chandler subsequent to the making of the original contract.

2. It will be noted that by the terms of the written contract the title to the ties passed to plaintiff upon inspection and payment of the stipulated advance. Defendants point out that but 11,000 out of between 16,000 and 17,000 ties were inspected and that the amount of the advance was less than the amount due under the terms of the contract.    They also point out that 2,500 of the ties were gotten out the second year and were not inspected, that many of the ties

got away and that there was no showing and no way of showing whether the ties taken by defendants had been inspected. They, therefore, insist that plaintiff has not established that title had passed to him at the time of the conversion and for this reason he was not entitled to recover. But there was testimony in the case that the inspection of the 11,000 ties showed 5 per cent. rejects, 38 per cent. number twos, and 57 per cent. number ones; that Chandler complained that the inspection was strong and he and plaintiff agreed without further inspection on a percentage of 60 per cent. number ones and 40 per cent. number twos, and that they also agreed that the advance was sufficient. We have already pointed out that it was competent for plaintiff and Chandler to make subsequent arrangements after the contract was signed. A waiver of inspection and a percentage agreed upon by the parties served all the purposes of an actual inspection and took the place of one. Likewise the agreement that the advance was sufficient took the place of the actual payment of the advance. If the jury believed the testimony they were justified in finding that the title to the ties passed to the plaintiff.

3. Defendants' counsel asked the court to submit the question of estoppel to the jury. This the court declined to do. Counsel here discuss the question of estoppel, waiver and acquiescence under separate heads. They all belong to the same family, and defendants' contention upon this record is really that there is an estoppel *in pais*, an estoppel by acquiescence and an estoppel by waiver. We shall, therefore, consider the contention under the one head of estoppel. Upon the record before us the court properly refused to submit the question of estoppel to the jury. There is no testimony in the record having any tendency to show any act of defendants in reliance upon the acts of plaintiff which are claimed to operate as an estoppel; they have not changed their position in any

way or been prejudiced in any degree by reason of any act of the plaintiff. Indeed, it is difficult to understand how defendants could have placed themselves in any better position. They took plaintiff's ties, under an agreement with Chandler to return tie for tie; they have returned not a one, have sold the ties and now have the money for them. How they could have improved their position but for the acts of plaintiff does not quite clearly appear. If this was all there was to the contention it could be dismissed without further comment, but defendants' counsel were precluded from introducing proof and from cross-examination by the view of the court that the defense of estoppel was not available under the plea of the general issue alone, and it, therefore, becomes necessary to determine that question.

4. In considering this question it is not necessary to go back of *Dean* v. *Crall,* 98 Mich. 591 (39 Am. St. Rep. 571), where it was held that estoppel need not be pleaded on the law side of the court, expressly overruling *Gooding* v. *Underwood,* 89 Mich. 187, and *Pearson* v. *Hardin,* 95 Mich. 360. Again in *Rogers* v. *Robinson,* 104 Mich. 329, it was expressly held that the defense of estoppel was available under a plea of the general issue. These cases were decided before the adoption of subdivision (*b*) of former Circuit Court Rule No. 7, having reference to affirmative defenses but which did not specifically mention the defense of estoppel. *Williams* v. *Brown,* 137 Mich. 569, was decided after the rule took effect and is the case most strongly relied upon by defendants' counsel. It is pointed out that here as in that case plaintiff did not set up the source of his title and it is insisted that under such circumstances a plea of the general issue is sufficient. But it should be noted that in that case the defense was that plaintiff did not have title because of fraud in the transaction. In an action for conversion plaintiff must establish his

title. If he does not establish title he must fail; and it makes no difference whether title is in defendant or someone else. Hence, evidence showing title in defendant or someone else goes directly to defeat plaintiff's right of recovery and is admissible ·under the plea of the general issue. We are not persuaded that this case goes quite as far as defendants' counsel contend although a later case to which we shall presently refer does sustain them. In *Heilwig* v. *Nybeck,* 179 Mich. 292 (Ann. Cas. 1915D, 356), where the action was trover for the conversion of a crop of potatoes, it was held that evidence to defeat the plaintiff's title was admissible under a plea of the general issue. In *Crowley Bros.* v. *Railway Co.,* 185 Mich. 482, it was held that defendant could not under a plea of the general issue show a special contract limiting its liability, but in *Lang* v. *Lundy,* 185 Mich. 390, it was held in a replevin case that the defense of estoppel was available under the general issue and *Dean* v. *Crall, supra,* was cited. This case doubtless sustains defendants' contention. The cases we have considered were all decided before the adoption of the present rules, and we think it must be accepted as the settled case law of the State at the time they were adopted that in actions of replevin or trover where the plaintiff did not in his declaration allege the source of his title, the defense of estoppel was available under the general issue.

This case law was before the court when the present rules were adopted, and with it before the court specific defenses (which we shall italicize) were added to those in the former rules of which notice must be given under the plea of the general issue. Section 2 of Circuit Court Rule No. 23 provides:

"An affirmative defense, such as payment, release, satisfaction, discharge, license, fraud, *duress, estoppel, statute of frauds, illegality, that an instrument or transaction is either void or voidable in point of law,*

want or failure of consideration in whole or in part, and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the plaintiff's declaration, *and any ground which, if not raised on the pleadings, would be likely to take the opposite party by surprise,* must be plainly set forth in a notice added to the defendant's plea. The signature of the defendant's attorney following such a notice shall be a sufficient signing of both the plea and the notice."

Adding the defense of estoppel was not inadvertently done, nor was the defense in any way qualified by the nature of the action or the contents of plaintiff's declaration. So far as the language of the rule is concerned it is equally applicable to actions for conversion as to actions in assumpsit. In an action for conversion the defense of estoppel does not assail the plaintiff's title in fact, but the effect of the defense is to say to the plaintiff: "You can not assert your title by reason of certain acts of yours upon which I have relied to my injury." It was deemed advisable to require notice of such defense and it was added to the list of defenses found in the former rule. The ruling of the trial judge but sustained the rule and was not erroneous.

5. We are persuaded that there was some evidence, sufficient to take the question to the jury, that the 606 ties belonged to plaintiff. But we think the testimony is overwhelming that they were the property of defendant company and that they were purchased by it from John Gotez. They were not shipped by defendant until October while the ties received from Chandler were shipped in July. The testimony is convincing that they bore the mark "J. G." Defendants moved for a new trial on the ground that the verdict was against the weight of the evidence. Upon the main case we think the plaintiff's testimony preponderates. As to the 606 ties the testimony is overwhelming that they belonged to the defendants. The

record fairly discloses their value to be $303.10. If plaintiff will within 30 days remit this amount the judgment as so reduced will be affirmed. If not, a new trial will be granted. In either event defendants will recover costs of this court.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.