BLOUNT *v.* METROPOLITAN LIFE INSURANCE CO. *et al.*

326

No. 13719.   MAY 17, 1941.   REHEARING DENIED JUNE 14, 1941.

*Edward F. Taylor,* for plaintiff.

*Jones, Jones & Sparks,* for defendants.

GRICE, Justice. ■ On a former appearance of this case the judgment was reversed because the judge sustained a demurrer and dismissed the action, the demurrer being limited to an attack on the jurisdiction of the court, and not including the general ground that the petition stated no cause of action or showed no ground for equitable relief. In the opinion it was expressly stated that no adjudication was made with reference thereto. *Blount* v. *Metropoli-*

*tan Life Insurance Co.,* supra. That decision is not determinative of the question whether the plaintiff, if she proved her case as laid, would be entitled to any or all of the relief prayed.

■ In *Crew* v. *Hutcheson,* 115 *Ga.* 511 (42 S. E. 16), five Justices participated, Mr. Justice Lewis being absent. A majority, Justices Little, Fish, and Cobb, ruled that it was proper for a trial judge ex mero motu to decline to allow defendants to sustain by proof an answer which set forth no valid defense. On this question of practice Chief Justice Simmons and Presiding Justice Lumpkin found it unnecessary to express their views, since they were of the opinion that the defendant's answer set up a valid defense. In principle, that decision is authority for our ruling on the point of practice here presented. *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280), also was a decision by five Justices, Presiding Justice Lumpkin being absent. It was there held that the petition set forth no cause of action, and that the court erred in directing the verdict for the plaintiffs, although no demurrer to the petition was filed. In *Crew* v. *Hutcheson,* supra, by the five Justices present, it was ruled that if a petition be bad in substance, it is error to direct a verdict in favor of the plaintiff; if a plea be bad in substance, it is error to direct a verdict in favor of defendant; that mere proof of a fact will not authorize a recovery unless the existence of such fact so authorizes; and that a failure to demur does not confess the action either in law or in fact. In *O'Connor* v. *Brucker,* 117 *Ga.* 451 (43 S. E. 731), the trial court permitted a plaintiff to recover on the theory that the failure to demur admitted that the petition set out a cause of action. This court held that the defendant was not liable, and in reversing the judgment said: "The judge in the court below evidently thought, from the decision in *Fleming* v. *Roberts,* 114 *Ga.* 634 (40 S. E. 792), that the failure to demur admitted that the petition set out a cause of action, and precluded him from passing on the question as to whether O'Connor was or was not liable under the facts stated. The later case of *Kelly* v. *Strouse,* 116 *Ga.* 872 (4) (43 S. E. 280), adjudges that no technical rule, or failure to demur or to plead, will authorize the courts to impose a liability on the defendant, where, from the facts stated in the petition or from the facts as they appear in evidence, there is no liability in law." *Kelly* v. *Strouse* has been cited perhaps as often as any case in our books.

It was a landmark on the subject of the law of practice here being dealt with; and we feel confident in saying that although it was not a six-judge case, the important question there considered and decided is now firmly imbedded in the jurisprudence of this State. In *Goff* v. *National Bank of Tifton,* 170 *Ga.* 691 (153 S. E. 767), it was ruled: "Where it appears on the face of the petition that it set forth no cause of action, a court of error is bound to notice it. A failure to demur does not confess the existence of a cause of action in law or equity." Applying the foregoing to the record before us, it must be held that the judgment will not be reversed on a bill of exceptions assigning error on the direction of a verdict in favor of the defendants, if, although the defendants do not by demurrer challenge the sufficiency of the petition, the petition, the answer and the evidence introduced by both sides, taken as a whole, do not entitle the plaintiff to any relief.

■ The plaintiff bases her right to relief on a state of facts set forth in substance in the third headnote. The company that issued the policy was not a fraternal benefit society. The contract which she entered into with it expressly provided that she did not reserve the right to change the beneficiary. While not so characterized by her in her pleadings, it would seem that if she has any right to relief it is because what took place between her and her husband amounted to an equitable assignment to her of his interest in the policy. If it was not that, then she has no standing in court. "In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee." 5 C. J. § 78. As regards this principle to life-insurance policies, it has mainly been applied in that class of cases where it was held that effect would be given to the intention of the insured where he had done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company, but was unable to send the policy, by reason of circumstances beyond his control, as where it was lost, or was in the possession of another person who refused to surrender it, or was otherwise inaccessible, or where he sent both the policy and a proper written notice or request, and all that remained to be done were certain formal and ministerial acts on the part of the company, such as the indorsement of the change on the policy, and these acts were either not

done at all or were done after the death of insured. 37 C. J. § 350. A number of authorities are cited in support of the rule stated above. See *Barrett* v. *Barrett,* 173 *Ga.* 375 (160 S. E. 399).

In *Jones* v. *Glover,* 93 *Ga.* 484 (21 S. E. 50), it was ruled that before an equitable assignment could be inferred, facts or circumstances must appear from which it could be rightly inferred by a jury, both that a complete equity had arisen between the assignor and the assignee which would support an assignment, and that these two parties contemplated an immediate change of ownership with respect to the particular fund in question. We can not read into the allegations of the petition in the instant case any agreement that there should be an immediate change of ownership. The agreement was that "if she would pay the premiums she could hold the policy until he repaid her the amount of money which she advanced; and that if he did not repay her the money, then she could have the policy, and could do anything she wanted to with the policy." This looks more like a pledge than an assignment. At most, if an assignment, it was only intended to operate in the event of his failure to pay the premiums. It was not an absolute appropriation by an assignor of a debt or fund sought to be assigned to the use of the assignee.

We do not overlook the fact that it appears from the petition and from the uncontradicted evidence that the man and woman were divorced after the date of the policy. At the time the policy was taken out he had an insurable interest in his life. 37 C. J. § 59. We need not decide the abstract question whether or not, were she to die to-day, he, although divorced from her, could nevertheless collect the insurance since at the time the policy was taken out he was her husband. See the authorities cited in the note in 37 C. J. 397, 398, § 68. The case as presented does not raise that question, and for us to decide it would be to rule in advance on a matter which may never arise.

The brief filed in behalf of the plaintiff in error contains the statement that "Equity, justice, and fairness require that Mary Blount have the relief prayed for." We once again answer that we are not invested with the power to decide cases according to our own ideas of equity, justice, and fairness. Once we get away from the law and its standards of equity, justice, and fairness, and determine cases according to the individual and personal standards

of the judges, uncontrolled by law, then indeed would justice be administered according to the length of the chancellor's foot. There would be no uniformity, no certainty, in the administration of justice. Unless the equity, justice, and fairness of the case measure up to the requirements of law, courts can grant no relief. The case as made by the pleadings and the proof did not entitle the plaintiff to recover, and the court's judgment will not be reversed for directing the verdict in favor of the defendants.

*Judgment affirmed. All the Justices concur.*