[Civ. No. 13503. First Dist., Div. One. Nov. 24, 1947.]

WELBY L. HUNT, Respondent, v. OATHER PAUL MAHONEY et al., Appellants.

James W. Harvey, Alan H. Critcher and Elmer C. Mower for Appellants.

Harry G. Henderson for Respondent.

BRAY, J.—The trial court rendered judgment in favor of plaintiff against defendants, decreeing specific performance of a written contract for the sale of certain real property, including the home thereon, awarding damages in the sum of $300 for use and occupancy, and the sum of $75 to compensate for a partially incompete bathroom.

The contract upon which this action is based was furnished and filled out by defendants' real estate agent, and is entitled "Deposit Receipt for Purchase of Real Property." The

receipt portion is signed "William Nock Company Real Estate Broker by M. J. Scotto," is dated February 8, 1946, and recites that there is received from plaintiff $2,000 as deposit on account of purchase price of the described property; that the total purchase price is $16,000 "and the balance of the same is to be paid within thirty days from date hereof, as follows: Cash. House to be delivered completely finished. . . . That in the event said buyer shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the sellers, be retained as liquidated and agreed damages. That in the event the title to said property shall not prove marketable and said seller shall not perfect same within ninety (90) days from this date, the buyer shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder. That the evidence of title is to be in the form of a Policy of Title Insurance, issued through MARIN TITLE GUARANTY COMPANY and to be furnished and paid for by the purchaser. . . . That the taxes for the current fiscal year, insurance premiums, if policies are acceptable to Purchaser, and rents, shall be pro rated from date of delivery of deed or final contract of sale. Time is the essence of this contract, but the time for any act required hereunder may for sufficient cause be extended not longer than thirty days by the agent signing this contract." We have omitted portions of the receipt not involved here. Following the receipt plaintiff signed the following statement: "I agree to purchase the above described property on the terms and conditions herein stated"; and then appears "I agree to sell the above described property on the terms and conditions herein stated, and agree to pay the above signed Broker as commission five (5) per cent of the above purchase price, or one half the deposit in case same is forfeited by the buyer, provided same shall not exceed the full amount of the commission," signed by defendants.

At the time of the signing of the contract the house still was not finished, and defendant Oather Mahoney admitted that on April 9th, the time to which the agent had authority to extend the time of payment, it was still not finished.

The house was being built by defendants, who, although it was not completely finished, occupied it. Mechanics' liens were filed against the property and demands for payment of

bills incurred in building were being pressed against defendants. About two weeks after the signing of the contract, Scotto, the agent of defendants, contacted plaintiff and asked him to permit $1,200 of the $2,000 deposit, which was in the hands of the real estate company, to be drawn out and used by defendants in the payment of certain bills for materials which had gone into the house. Plaintiff agreed, and on March 13th, four days after defendants now claim plaintiff became in default, signed a letter to the real estate agency authorizing the "advance up to $1,200, to the account of the seller, for the payment of material accounts previous to filing of notice of completion." Thereupon, the agency paid one and possibly two material bills, and gave the balance to defendants who used it in paying other material bills.

When the 30 days from the date of the contract had passed, the house was still unfinished and mechanics' liens were still against the property and in prospect. Scotto had requested the $1,200 advance, which a few days later was granted as above set forth, and from time to time the plaintiff came to the house where the defendants were living to observe the progress of the work. Nothing seems to have been done by either party or the agent to extend formally the time of payment. However, it is apparent that all parties assumed that the time of payment had been extended the additional 30 days.

On April 9th, the day the balance of the purchase price would have to be paid under the extended time, plaintiff, a Mr. Lethbridge representing the bank which had agreed to lend plaintiff the balance of the purchase price, and Scotto, met at the office of the title company mentioned in the contract and whom the real estate agent had instructed to "prepare a report and instructions for purposes of this sale." Neither defendant was present. The purpose of the meeting was to pay to the title company the balance of the purchase price, to be delivered to defendants as soon as good title could be vested in plaintiff and a deed of trust from plaintiff to the bank be made a valid first lien. Mr. Darrow, the title company representative, called attention to the fact that the title to the property was not clear because of the mechanics' liens already filed and the fact that the legal time after notice of completion in which to file additional liens had not yet expired. Lethbridge stated that the bank was prepared to advance the necessary moneys to pay the balance

of the purchase price and that the title company could draw on the bank for it at any time. Darrow recommended that the money not be put up or drawn until the necessary time had expired after completion notice filed. Scotto, representing defendants, acquiesced in this. It was then suggested that the completion of the house would be expedited if some method were arrived at by which the plaintiff could put in escrow moneys to pay off the labor claims, without waiting for the expiration of the statutory period, and Scotto agreed to consult his principals in this respect. Scotto talked by phone to defendant Helen Mahoney, explained the situation and asked her to have defendant Oather Mahoney phone him. Despite repeated phone calls and messages by Scotto to Mrs. Mahoney, defendant Oather Mahoney would not or did not contact Scotto for a week or more. When he finally did contact Scotto, he informed the latter that he had resold the house.

The first contention made by defendants is that as time is expressly made of the essence of the contract, plaintiff's failure to pay the $14,000 in 30 days constituted a failure to comply with the contract.

There are four answers to this: first, the seller had failed to comply with his agreement to have the house finished; second, the seller was in no position to deliver marketable title; third, the time of payment was extended by, or its extension acquiesced in, by both the seller and his agent; and fourth, the defendants waived the right to claim a default. The first two answers will be considered later.

As to the third, the evidence shows that while there was no express statement by the agent that the time was extended, his conduct, and that of the defendants in having him obtain from plaintiff consent to the withdrawal of $1,200 from the deposit, which amount they accepted after the 30 days had expired, shows conclusively that the agent was exercising, with their knowledge and consent (although he had the right to do it without their consent), the right given him by the express terms of the contract to extend the time of payment for an additional 30 days.

Defendants cite *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [55 P. 713, 69 Am. St. Rep. 17, 43 L.R.A. 199]; *Winter* v. *Kitto*, 100 Cal.App. 302 [279 P.1024]; *Kelso* v. *Ulrich*, 67 Cal.App.2d 698 [155 P.2d 407, and *Martinelli* v. *Hogrefe*, 123 Cal.App. 438, [11 P.2d 412], as authority for the

proposition that where time is the essence of the contract, the payment of the final amount under the contract is a condition precedent to the right of the vendee to demand a conveyance, and upon failure to make such payment, as provided, the vendor has the right immediately to declare a forfeiture. There can be no quarrel with that principle of law. But it is not applicable here, for the reason that the contract itself provided that the time of payment could be extended for 30 days, and the evidence showed, and the court found, that it had been so extended.

Fourth: Defendants accepted $1,200 of the deposit after the date when the $14,000 should have been paid, if, as contended by defendants, the time of payment was not extended. At argument, defendants contended that they were entitled to it as a forfeiture under the contract, which provided that in the event of failure by plaintiff to pay the balance of the purchase price the defendants were entitled to retain the deposit as liquidated damages. But it was not so taken by defendants. Defendant Oather testified that he requested that he "might be privileged to withdraw" this $1,200. The evidence clearly shows that this request was communicated to plaintiff by Scotto, and the withdrawal was made solely by reason of the letter which plaintiff signed authorizing it as an *advance*. There was no question of forfeiture at the time. That this withdrawal was a waiver of the right to declare a default is well shown by the following language from *Boone* v. *Templeman,* 158 Cal. 290, at page 294 [110 P. 947, 139 Am. St. Rep. 126]: "The general rule on the subject is thus stated by Mr. Pomeroy: 'A condition that the title shall be made, or the price shall be paid, on or before a day named, may be waived by the party entitled to performance; and if such party thus waives the exact performance at the day, or if he goes on treating the agreement as still binding after default has been made, he cannot afterwards turn around and set up the delay or default as creating a forfeiture, and therefore, a defense.' (Pomeroy on Contracts, sec. 337.) 'The one entitled to insist upon a punctual performance by the other or else that the agreement be ended, may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly or by his conduct; and his

conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting, and not ended by the other party's default.' (Pomeroy on Contracts, sec. 294.) Mr. Sugden says: 'Although time may be made of the essence of the contract, yet the condition may be waived. . . .' "

Defendants' second contention is that there could be no extension of the time of payment by the agent unless such extension was in writing, citing section 1698, Civil Code, and *Battaglia* v. *Winchester Dried Fruit Co.*, 32 Cal.App.2d 436 [90 P.2d 111]. But neither that section nor case applies here. The section reads: "A contract in writing may be *altered* by a contract in writing, or by an executed oral agreement, and not otherwise." (Emphasis added.) Here the contract was not being altered. On the contrary, the extension was made pursuant to the very terms of the contract itself.

Defendants' third contention is that there was no tender or sufficient offer of performance by plaintiff. The first answer to this contention is that the evidence shows such tender and offer of performance. Plaintiff and his banker met with defendants' agent at the title company. True, plaintiff did not have $14,000 in cash present. But after stating that they were there for the purpose of paying the balance of the purchase price, the banker stated that they were ready, able and willing to pay the balance of the purchase price, and the title company could draw on them for it at any time. No objection was made by defendants' agent to this form of tender. In fact, he seemed to consider it the proper method. Had the title been marketable and the house finished at that time, there can be no question but that the money would have been paid.

Scotto handled for defendants all the details of the transaction from the very beginning, and it is apparent from the evidence that all parties expected the matters connected with the receiving of the final payment to be handled by him. In fact, the defendants at no time have claimed that he did not have such authority. A tender to him under the circumstances of this case was a tender to the defendants. A failure to object to the form of the tender constituted a waiver. "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him,

are waived by the creditor, if not then stated." (Civ. Code, § 1501.) "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards." (Code Civ. Proc., § 2076.) "Objections held to be waived by the creditor when not stated at the time of the making of the tender include objections as to amount, the person making it, conditions accompanying it, and the medium of exchange in which the offer is made." (24 Cal.Jur., p. 531.) "Further, if, because of a generally recognized business usage or because of the course of dealings between the parties, the obligor has reason to believe that tender in a medium other than that prescribed by law will be acceptable and the obligee refuses it, insisting on legal tender, the obligee must give the obligor a reasonable time in which to make a valid tender. . . . The more technical the objection to the tender, the more reasonable will be the inference from slight evidence that the objection is waived. . . ." (Williston on Contracts, rev. ed., vol. 6, pp. 5157, 5159.)

■ Defendants seem to contend that in order to bring this suit, the tender of April 9th, if made, must be kept good by the deposit of the $14,000 in the bank for the account of defendants, and cites section 1500 of the Civil Code in support of this contention. But as said in *Marshall* v. *Hilton*, 209 Cal. 531, at page 534 [289 P. 165] : "This section has no application to a tender made in a case of this kind. It applies in cases where the object and purpose of the tender is to extinguish an obligation. Here no claim is made that the tender proven extinguishes the obligation of the respondents to pay to the appellant the amount due her under the agreement of sale, but was a preliminary step to be taken before an action could be instituted by the respondents against the appellant to specifically perform the contract. In such a case 'the law does not require the purchaser to keep the tender good or deposit the money in the vendor's name and thus place himself at the vendor's mercy, since the decree, if granted, will require the plaintiff to pay the purchase money before receiving the deed.' (23 Cal.Jur. 459.) "

■ A second answer to this contention is that the house was not finished. At that time, as well as at the expiration of

the first 30-day period, the defendants admit there was still much to be done to the house to finish it.

A third answer to this contention is that defendants were in no position at this time to deliver a marketable title. The agreement provides "in the event the title to said property shall not prove marketable and said seller shall not perfect same within ninety (90) days from this date, the buyer shall have the option of demanding and receiving back *said deposit*" etc. (Emphasis added.) It is clear that the marketability of title was a condition precedent to the payment of the purchase price and that if the title was not marketable not only did the seller have 90 days to perfect it, but the time of payment likewise would be extended, for, if at the end of the 90 days the title had not been perfected, the buyer had the option of getting back his deposit. Had it been intended that the buyer must pay the balance of the purchase price and then wait for the seller to perfect title, this clause would have provided for the return of the *purchase price* rather than the *deposit*.

Defendants rely upon *Bourdieu* v. *Baker*, 6 Cal.App.2d 150 [44 P.2d 587], for their contention that plaintiff was obligated to pay the balance of $14,000, and then wait 90 days for defendants to perfect the title. But the situation in that case was entirely different from that here. There the contract acknowledged receipt of $10 on account of the purchase price of $25,000, and provided that the purchase price was to be paid: $3,000 on or before 30 days, and the balance to be paid on or before six months from date; title to be perfect and deed to be delivered on or before a date five months later, "Provided, however, that the payment of $3000.— is paid at said date, but if not paid . . . then this contract to be of no effect." It will be noted that there were two payments to be made, one of $3,000 in 30 days, and the other of $22,000 in six months. Within the 30 days, the buyer deposited the $3,000 with a title company in escrow to be paid to the seller when the title company had a deed of the property to the sellers. Moreover, the buyer instructed the title company to make certain payments, such as mortgage interest and taxes, out of the $3,000, none of which payments the seller had ordered. Notice was given the seller of this deposit. The court held that the agreement constituted only an option to purchase the land. Here, the agreement is definitely one of purchase and sale. There the court held that the offer to sell would not become binding until the payment of $3,000 within the 30 days, that such payment constituting acceptance must be made

in accordance with the terms of the offer, that the buyer attempted to attach terms to his payment, and that "an acceptance based upon terms varying from those offered constitutes a rejection of the offer." (P. 158.) It also held that the contract did not provide for payment into escrow but to the owner. In our case, while the contract provided for the payment to the owner, the evidence shows that the seller's agent who handled the transaction from the time of entering into the contract, including the negotiations with the buyer concerning an advance payment of a part of the deposit, agreed that the payment was to be made at the title company's office. There, there was no requirement that the title be perfect at the time of the $3,000 payment. It merely had to be perfect at the time of the final payment. Here, there was no intermediate payment to be made. The $14,000 was a final payment and the title had to be marketable when that payment was made.

Assuming that there was no tender on the due date, April 9th, defendants were in no position to accept the $14,000 were it tendered, as they themselves could not have complied with the contract, and conveyed to plaintiff a marketable title and a finished house. The law does not require an idle act. (Williston on Contracts, rev. ed., vol. 3, § 698A, p. 2008.) Before defendants were in a position to perform on their part, defendants notified plaintiff through their agent, Scotto, that they did not intend to perform the contract. In fact, they claimed they had made it impossible to do so by selling the property to another. (It appeared later that they had not sold, but had placed a new deed of trust on the property.) This, of course, excused plaintiff from thereafter making any tender. (Williston on Contracts, *supra; Giarratano* v. *McIlwain,* 215 App.Div. 644 [214 N.Y.S. 582]; *Tatum* v. *Levi,* 117 Cal.App. 83 [3 P.2d 963].)

The position taken by defendants on this appeal shows that the sellers thought they saw an opportunity, through technicalities, to get their property back and to keep the deposit of the buyer, who at all times acted in the utmost good faith. The law does not look favorably upon such a situation.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 22, 1948.