[Civ. No. 6020.   Fourth Dist.   May 26, 1959.]

HENNING NEWMAN et al., Respondents, v. DONALD FORBES ALBERT, as Executor, etc., Appellant.

Rogers & Rogers for Appellant.

McCormick, Moock & McCormick and William O. Minor for Respondents.

MUSSELL, J.—This is an action for declaratory relief and for specific performance of a contract for the purchase and sale of real property. The trial court ordered judgment for plaintiffs and ordered that a deed conveying the real property involved be delivered to plaintiffs upon payment to the defendant executor of the sum of $9,000. Defendant Donald Forbes Albert, as executor of the estate of John William Forbes, appeals from the judgment, claiming that the evidence is insufficient to support and sustain the findings.

On May 24, 1946, John W. Forbes, Henning Newman and his wife, Esther Newman, signed and executed an agreement for the sale of certain real property near Lindsay, in Tulare County, by Forbes to the Newmans, for the total contract price of $60,000. The agreement (plaintiffs' Exhibit 1) provides for the payment by the buyers of $5,000 upon the execution and delivery of the agreement, $10,000 on or before July 1, 1946, and the balance of $45,000 in yearly payments of $3,500, plus interest. A copy of the agreement and a deed from Forbes to the purchasers were delivered to the Security Title Company in Visalia as escrow holder and agent for the collection of the sums becoming due under the contract. Contemporaneously with this agreement of sale, and on the same date, the parties executed an agreement in writing (defendant's Exhibit A) wherein it was agreed that the Newmans shall have the use of all trucks, tractors, tools, machinery and equipment of Forbes for one year, free of cost, and at any time

within 60 days after the expiration of said year, the Newmans shall have the option to purchase said machinery and equipment. It was further agreed that Forbes "may for so long as said contract is in effect, have the right to personally use the one bedroom in the dwelling house on the said olive grove that he now uses, as his own bedroom for his personal use as a bedroom, and that for the same period of time (the Newmans) will furnish (Forbes) with meals and board as ordinarily served in their family, at no cost to (Forbes)." It was further agreed that if Forbes required any extraordinary service, the Newmans would be paid a reasonable sum therefor. Forbes lived with the Newmans from May, 1946, to January 27, 1947, when he was taken to a sanitarium in Glendale, where he died on February 1, 1947.

In the summer of 1946 Forbes handed Newman a signed list of machinery and equipment then on the property and told Newman that he was giving them this property. Newman testified in this connection that Forbes "One day was sitting writing in the afternoon, and he said 'Henny, I have a surprise for you,' and handed me this paper and said that he thinks we was doing so good that he would help us along and give us this equipment, and he gave it to me and handed me this paper." The list of equipment and machinery was substantially the same as that on which the Newmans had an option to purchase.

On November 26, 1946, Forbes signed a document acknowledging receipt of $20,000 paid on the contract and interest to January 1, 1947, and stating that "thereafter all interest to accrue is, for a good and valuable consideration by me received of and from the Newmans, hereby waived." At the time this document was executed by Forbes a signed copy was delivered to the Newmans and, at the Newmans' request, the following was typed at the bottom of the agreement: "In consideration of the waiver of said interest, we agree to provide John W. Forbes with a place to live in our home and home care therein for so long as he shall live." Newman and his wife signed this agreement.

During the summer of 1946 Forbes and the Newmans had many conversations with reference to the condition of the olive trees on the property. These trees were in bad condition and in November, 1946, Forbes offered to deduct $10,000 from the purchase price of the property if Newman would graft the trees and put them in good condition.

On January 27, 1947, Forbes asked his attorney, James R. McBride, to come out to the Newmans' house where he was staying, stating that he "had some documents for him to take care of." When McBride arrived he had a discussion with Forbes alone in Forbes' room, following which Mr. and Mrs. Newman were called in and McBride was asked by Forbes to prepare the necessary document to deduct $10,000 from the purchase price of $60,000. The document was then written out by McBride and is as follows:

"To Henning and Esther Newman:

"Because the trees in the grove are in worse condition than I expected I hereby modify the terms of my agreement of April 1, 1946 by reducing the price from $60,000.00 to $50,-000 00 which is a reduction of $10,000 00 and the payment of said $10,000 00 at the end or last maturing payment or payments is hereby waived.

"Date   January 27, 1947.

"/s/   J. W. Forbes."

This document was then signed by Forbes, who handed it to Newman and Newman gave it back to McBride, who took it with him when he left the house. Newman considered this document to contain the complete agreement and asked McBride if the piece of paper was "o.k." and McBride said, "Why not?" Forbes was preparing to go to a sanitarium in Glendale and told the Newmans that one of the matters he had to take care of before he went was putting in writing the agreement that they had about taking $10,000 off the last payment for the grafting of the trees.

From April 21, 1946, to April 1, 1954, six payments of $3,500 each were made by the Newmans to the executor of the Forbes estate, or a total of $21,000. The Newmans completed the grafting of the trees as agreed when Forbes signed the waiver of January 27, 1947. On April 26, 1955, the Newmans deposited with the Security Title Insurance Company the check of C. O. Cowles for $5,900, the check of Henning Newman for $3,100, and a United States Treasury check for $205. This last mentioned check was payable to the Newmans and the executor of the Forbes estate and was endorsed by the Newmans. The title company, on orders from the attorneys for the estate, refused to deliver a deed to the property to the Newmans and the present action followed. The Newmans have made substantial improvements to the property involved and have been in possession since May of 1946.

█ The rule as to our province, where, as here, the sufficiency of the evidence to support the trial court's findings is questioned, is stated in *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689], as follows:

" ' . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) (*Crawford* v. *Southern Pacific Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].) The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict."

█ Questions as to the credibility of a witness and the determination of conflicts and inconsistencies in his testimony are for the trial judge. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].)

█ Appellant contends that there was no consideration for the waiver of interest dated November 26, 1946 (plaintiffs' exhibit 30). However, the document was in writing and was a release of future interest which does not require a new consideration. (Civ. Code, § 1541; *Hames* v. *Rust*, 64 Cal.App.2d 70, 75 [148 P.2d 132].) Moreover, there was written into the waiver as a consideration an agreement to provide Forbes with a "place to live in our home, and home care therein so long as he shall live."

Appellant argues that there was no consideration for the waiver written by Attorney McBride and signed by Forbes on January 27, 1947, reducing the purchase price from $60,000 to $50,000. This argument is likewise without merit. █ As is said in *Crow* v. *P. E. G. Construction Co., Inc.*, 156 Cal.App. 2d 271, 277 [319 P.2d 47] : "Since the adoption of Civil Code, section 1541, it has uniformly been held that where the writing is plain and explicit and given for the express purpose of effecting a complete release of the obligation, a consideration is not necessary. (Citations.)" █ There is substantial evidence in the record to support the trial court's finding that in exchange for this waiver Newman agreed to graft the olive

trees on the property and that the grafting of such trees has been completed and fully performed by plaintiffs. The rule is that an executed oral agreement will serve as a modification or release of a written agreement and this too without regard to the presence or absence of a consideration. (*Julian* v. *Gold*, 214 Cal. 74, 76 [3 P.2d 1009] ; *Price* v. *Price*, 24 Cal.App.2d 462, 464 [75 P.2d 655].)

█ Appellant argues that the evidence is not sufficient to sustain the court's findings:

"That the fair market value of said real property at the time of the execution of the contract referred to in Paragraph I above was the sum of $49,850.00; that the agreed price for the purchase and sale of said real property as first agreed to, to wit, the sum of $60,000.00, or as reduced by the document referred to in Paragraph XIV hereof, to wit, the sum of $50,000.00, is just, fair and adequate consideration and price for said land insofar as the defendant Donald Forbes Albert, as Executor, is concerned; that the contract referred to in Paragraph I hereof together with alterations thereof, is in every sense and way, just, fair and reasonable insofar as the defendant Donald Forbes Albert, as Executor, is concerned."

In this connection George Murphy, inheritance tax appraiser for Tulare County, testified that after checking the soil conditions on the property he tried to check the water conditions and formulate a schedule of sales of comparable properties; that he checked with the title company and olive growers and producers; that he checked on prices over a period of years and that he had appraised properties in the immediate vicinity shortly after the war and from then on; that it was his opinion that the value of the property involved as of April 1, 1946, was $49,850. The finding that the fair market value of the property is the sum of $50,000 and is a just, fair and adequate consideration and price for the land involved is sufficiently supported by the record.

Appellant further contends that the evidence is insufficient to support the finding:

"That on the 26th day of April, 1955, the plaintiffs caused certain funds representing the balance of the purchase price and escrow instructions to be deposited with the Security Title Insurance Company which said instructions and funds are reflected in Plaintiffs' Exhibits Nos. 15 and 16 herein; that at the time of the deposit of such funds and instructions, the said Security Title Insurance Company could have complied with all such instructions had they been given approval

for the recognition of the validity of the waiver referred to in Paragraph XIV above and introduced into evidence as Plaintiffs' Exhibit No. 14 herein."

This finding also has substantial evidentiary support and cannot be disturbed. Appellant contends that the tender was insufficient because it did not include interest on the contract and that the tender included a check made payable to defendants over which a dispute existed. The waiver of interest on November 26, 1946, delivered to the title company, made it unnecessary that interest be included. ■ Plaintiffs made six payments of $3,500 each during the years 1946 through 1954 and the representatives of the estate made no complaint as to their failure to include interest. It is claimed that there was a dispute over the Treasury check of $205. There is no evidence that this check, if presented for payment, would not have been paid in full. It was endorsed by the payees and was a valid tender of payment. Moreover, no objection was made to the tender at the time. ■ All objections to the mode of and offer of performance which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him are waived by the creditor, if not then stated. (*Hunt* v. *Mahoney,* 82 Cal.App.2d 540, 546-547 [187 P.2d 43].)

■ Appellant asserts that the evidence does not support the finding that plaintiffs should not be estopped from asserting the validity of the document reducing the purchase price of the property from $60,000 to $50,000. This assertion is based on testimony that appellant's attorney was told by Attorney McBride in 1947 that there was an unpaid balance on the contract of $40,000. The record shows in this connection that the attorney for appellant examined the file in the office of the title company. Unless clearly warranted, estoppels are not favored. (*Edgington* v. *Security-First Nat. Bank,* 78 Cal.App.2d 849, 858 [179 P.2d 640].)

■ In *Cardosa* v. *Fireman's Fund Ins. Co.,* 144 Cal.App. 2d 279, 282-283 [300 P.2d 875], it is held that to make out a case of abandonment or waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts, amounting to an estoppel on his part and that waiver is ordinarily a question of fact.

■ Appellant further asserts that plaintiffs have been guilty of laches in bringing the instant action. In *Williams* v. *Marshall,* 37 Cal.2d 445, 455 [235 P.2d 372]. it is said that

the courts have frequently declared that there is no artificial rule as to the lapse of time which will justify the application of the doctrine of laches; that each case must be determined upon the basis of its facts, and in the absence of a palpable abuse of discretion the trial court's finding upon the issue will not be disturbed upon appeal. No abuse of discretion appears in this connection.

It is further claimed that the evidence was insufficient to show that Forbes made a valid gift of the machinery and equipment to plaintiffs. The record shows that in 1946 Forbes told the Newmans that he wanted to do them a "little favor" because they were taking such good care of him and were "doing so good." He then handed Newman a piece of paper listing the machinery and equipment on the ranch and told them that he was making a gift of this equipment. Under these circumstances a valid gift was established. (*Blonde* v. *Estate of Jenkins*, 131 Cal.App.2d 682, 685 [281 P.2d 14].)

An examination of the entire record herein leads us to the conclusion that the findings herein are sufficient to support the judgment.

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied June 22, 1959, and appellant's petition for a hearing by the Supreme Court was denied July 22, 1959.