Reo L. KNAUSS, Plaintiff and Respondent,

v.

MILES HOMES, INC., Defendant
and Appellant.

Civ. No. 8533.

Supreme Court of North Dakota.

Dec. 31, 1969.

Rehearing Denied Jan. 30, 1970.

Rausch & Chapman, Bismarck, for plaintiff and respondent.

William R. Mills, Bismarck, for defendant and appellant.

STRUTZ, Judge.

This is an action brought by Reo L. Knauss against Miles Homes, Inc., to quiet title to real property in Burleigh County described as the South Half (S½) of Section 25, Township 140 North, Range 76 West.

The facts, so far as they are pertinent to the issues of this case, disclose that the plaintiff, Reo L. Knauss, and one Harry J. Burke entered into an agreement in writing under the terms of which Burke went into possession of the property. Some time after the execution of this agreement, a dispute arose between the parties as to the nature of their relationship. Knauss asserted that it was a lease agreement with an option to buy, while Burke contended that the agreement was a contract for deed under the terms of which all payments of rent which were made by him were to be credited on the purchase price. The dispute was finally litigated and the district court held that the instrument which the parties had executed was a contract for deed and that all payments of rent made by Burke were to be applied on the balance due on the purchase price.

Thereafter, Burke, while in possession of and engaged in farming the land, purchased from Miles Homes, Inc., the defendant in the present action, materials for a house which he planned to construct on this property. To pay for such building materials, he executed and delivered to Miles a note and mortgage for the purchase price. The mortgage was promptly recorded. Some time after the recording of such mortgage, a number of judgments were docketed against Knauss, the seller of the land, which judgments became liens on the interest of Knauss in such property.

Burke began the construction of his home, using the materials which he had purchased from Miles. Before the house was completed, however, Burke defaulted in his payments to Knauss under the contract for deed. After considerable delay, Knauss brought an action for the cancellation of the contract for deed. Miles, which held the recorded mortgage on Burke's interest in the property, was not made a party to the action to cancel the contract. Judgment cancelling the contract for deed thereafter was entered in such action on November 24, 1964. No appeal was taken by Burke.

The mortgage given by Burke to Miles remained a cloud on Knauss's title, and the action here before the court was commenced on July 15, 1965, for the purpose of quieting title in Knauss and discharging such mortgage of record. The trial court ordered title quieted in Knauss as to any interest which Miles might have in the property by reason of its mortgage from Burke. From a judgment entered on such order, Miles appeals to this court, demanding trial de novo.

Any interest in property which is capable of being transferred may be mortgaged. Sec. 35-02-05, N.D.C.C. The interest of Burke, as purchaser under

the contract for deed, is an interest in property which he could transfer, and thus is an interest which he could mortgage. The mortgage given by Burke, as purchaser under the contract for deed for the purchase of the land from Knauss, covered all of the interest which Burke had in the land. This court has held that the interest of a holder of a contract for deed is a mortgageable interest. Simonson v. Wenzel, 27 N.D. 638, 147 N.W. 804, L.R.A.1918C, 780 (1914). In the action to quiet title against Miles, the defendant, by counterclaim, sought to foreclose its mortgage. In the trial of that action, the plaintiff's attorney stated to the trial court:

"We have no quarrel with the fact that they obtained a mortgage upon the interest that the Burkes had."

█ If the law gives to the holder of a contract for deed the right to mortgage any interest which he has in the contract, it must of necessity give to the party to whom such mortgage is given the interest and the rights which the mortgagor has under the contract. The rights which the holder of a contract has in the property described in a contract for deed cannot be terminated by the seller without notice to such holder.

The mortgage to Miles was immediately put on record. But the evidence does not disclose that Miles gave any notice of its interest in the property to Knauss other than to place its mortgage on record. And, while Burke, as purchaser under a contract for deed, had an interest which could be mortgaged to Miles, the enforcement of the mortgage would depend upon keeping the contract for deed in full force and effect. Sheehan v. McKinstry, 105 Or. 473, 210 P. 167, 34 A.L.R. 1315. In *Sheehan,* the mortgagee of the purchaser was made a party defendant in the action to cancel the contract. This was not done by Knauss in the action to cancel the Burke contract. The plaintiff, however, strenuously asserts that he was not required to join Miles in the action to cancel the

contract for deed held by Burke, citing Section 35–03–07, North Dakota Century Code. That section provides:

"The record of a mortgage duly made operates as notice to all subsequent purchasers and encumbrancers."

The plaintiff contends that since he is not a subsequent purchaser or encumbrancer, but is the holder of the legal title whose interest is long prior to the Miles mortgage, he cannot be regarded as a subsequent purchaser or encumbrancer and the recording of the Miles mortgage therefore was not constructive notice to him of Miles's interest in the property. He cites the early case of Sarles v. McGee, 1 N.D. 365, 48 N.W. 231 (1891), in support of this contention. In *Sarles,* this court said:

"A senior incumbrancer is not bound to respect the equitable rights of a junior incumbrancer in the property unless he has notice, either actual or constructive, of such rights. The recording of the junior mortgage is not constructive notice to the prior mortgagee of the existence of such mortgage, or of the mortgagee's equitable right thereunder, * * *."

█ Whether the rule laid down in *Sarles* would be applicable in this case, and whether it would permit the plaintiff, who admittedly would be in a position comparable to that of a senior encumbrancer, to cancel Burke's contract for deed without regard to the junior encumbrancer, Miles, where the plaintiff, in fact, has no actual or constructive notice of the Miles mortgage other than by the recording of the mortgage, which, under the above law, would not constitute notice, need not be decided in this action, however. Here, the defendant has demanded a trial de novo, and this court must try the case anew and determine the facts for itself. Johnson v. Davis, 140 N.W.2d 703 (N.D.1966); Bertsch v. Zahn, 141 N.W.2d 792 (N.D.1966); Verry v. Murphy, 163 N.W.2d 721 (N.D.1968).

Therefore, we have very carefully studied the record on the issue of whether the plaintiff had actual knowledge of the Miles mortgage in this case. Weighing the evidence and determining this issue anew, we can come to no conclusion other than that the plaintiff, prior to his action to cancel the Burke contract for deed, had actual knowledge of not only the construction of the Miles home on the property but of the giving of the mortgage to Miles. Judgment in the action cancelling the Burke contract for deed was entered on November 24, 1964. At the hearing in the case at bar, which was had on December 20, 1965, Knauss testified that he knew that a house was being built on the property as early as 1963 or 1964. The record shows that the first materials for this house were delivered on this property in 1960. But Knauss asserts that he had no actual knowledge that Burke had given Miles a mortgage. On cross-examination, when asked when he first had notice that Miles had a mortgage on the property, he answered: "Well, two or three years ago." He thus admitted that he had actual notice of the Miles mortgage as early as 1962 or 1963. On redirect, his counsel attempted to correct the effect of this testimony by asking whether this knowledge was gained by him after the action to cancel the contract for deed, and his reply was: "I think it was after that, yes."

A review of the entire evidence in this case shows that the plaintiff was very evasive in his answers to direct inquiries as to when he gained knowledge of the Miles mortgage. After having admitted that it was as early as 1962 or 1963—which would be long before the cancellation of the contract for deed held by Burke—he merely said, when asked by his own lawyer whether it was before or after the cancellation of the contract, "I think it was after that, yes."

■ Since this court must determine the facts anew on demand for trial de novo on appeal from judgment in an action tried to the court without a jury, we find that the plaintiff did have actual knowledge of the Miles mortgage at the time of the action to cancel the contract for deed given to Burke. And, since the plaintiff had actual knowledge of this mortgage, it is immaterial whether the recording of the mortgage was or was not constructive notice of the mortgage given to Miles under the provisions of Section 32–18–01, North Dakota Century Code. The plaintiff having had actual knowledge of the mortgage to Miles, he should have joined Miles as a party defendant in order to cut off any interest which Miles might have as assignee of the interest of Burke. While it is true that Miles, as mortgagee of Burke, could have no greater interest in the property than that of his mortgagor, Burke, that interest could not be terminated without notice to Miles where the plaintiff had actual knowledge of its existence.

Thus, in cancelling the contract for deed which he had given to Burke, the plaintiff should have joined Miles as party defendant. Had he done so, Miles would have been compelled to pay off the Burke contract to protect its interest. The plaintiff would have had his money, or Miles's interest would have been cut off. The plaintiff's contention, however, is that although he failed to join Miles, the interest which Miles had in the property should now belong to him, the plaintiff.

■ This is an equitable action. No court of equity should reward a plaintiff for failure to give proper notice to those who have an interest in the property; in this case, failure to give notice to Miles that Burke's contract was being cancelled. It is strenuously asserted by the dissent, however, that Miles, as mortgagee of Burke, cannot be considered a legal assignee of the purchaser. With this assertion we do not agree. But assuming, arguendo, that the mortgage given to Miles is not a legal assignment, we believe that, as such mortgagee, Miles is at least an

equitable assignee of Burke's interest in the contract for deed. An equitable assignment has been defined as one which, even though invalid at law as an assignment, is one which will be recognized and enforced in equity. Black's Law Dictionary, 4th Ed.

■ As an equitable assignee of Burke's interest, Miles would come under Section 32–18–01, North Dakota Century Code, which provides that on cancellation of a contract for deed, notice shall be given to the purchaser or his assigns. The plaintiff gave notice only to Burke, the purchaser. His failure to join Miles, the equitable assignee, whose interest was known to him, resulted in the interest of such assignee not being terminated by the cancellation of Burke's contract.

Some States, by statute, have even extended the right to redeem beyond assignees to a senior creditor having a lien, legal or equitable, upon the mortgaged premises subsequent to the mortgage. 37 Minn.S.A. Sec. 580.24 (as amended Laws 1967, Ch. 248, Sec. 3).

■ The question has been raised whether the action brought by Knauss to quiet title was a proper method of cutting off any interest which Miles might have under the mortgage. The right to terminate a vendee's rights under a land contract by an action to quiet title has long been recognized by our courts. Fargusson v. Talcott, 7 N.D. 183, 73 N.W. 207 (1897); Northwestern Mutual Savings & Loan Ass'n v. Hanson, 72 N.D. 629, 10 N.W.2d 599 (1943).

■ If the rights of a vendee may be terminated in an action to quiet title, there is absolutely no reason why the rights of the vendee's mortgagee, Miles, could not be so terminated. The rights of Miles could have been determined in the action to quiet title brought by Knauss against Miles. But, as we held in Fargusson v. Talcott and in Northwestern Mutual Savings & Loan Ass'n v. Hanson, *supra,* in such action the court should be guided by equitable principles since an action to quiet title is essentially an equitable action. Thus the court, in the action brought by Knauss against Miles to quiet title, should have given to Miles such period to make good the default under the contract as the facts of the case required.

For reasons stated in the opinion, the judgment of the trial court quieting title in the plaintiff, Knauss, is reversed and the case is remanded to the district court with instructions to fix a reasonable period of time within which the defendant, as assignee of the purchaser, will be allowed to make good the default on the purchase contract, depending upon the facts in this case as found by the court and based upon the equities which the court shall determine.

ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

TEIGEN, Chief Justice (dissenting).

I dissent.

If I understand the import of the majority opinion correctly, Miles, as Burke's assignee, is given the right to correct the default and, upon payment of the balance of the contract, will be entitled to receive title to the land from Knauss. It appears that Miles may do this without foreclosing its mortgage and that Knauss is precluded from raising any legal defenses to the validity of the mortgage or the debt it purports to secure. The majority appear to have abandoned the lien theory of mortgages as they specifically state, at the conclusion of their opinion, that Miles "as assignee of the purchaser [Burke], will be allowed to make good the default on the purchase contract, * * *" If Miles became the assignee of Burke's contract for deed, there is no need for Miles, or this court, to pay any attention to the judgment cancelling the contract against Burke because that proceeding would be a nullity as to Miles, the owner of the contract. If Miles is the assignee of Burke, it is the

owner of the contract and entitled to exercise whatever rights it provides as Knauss has not cancelled the contract against Miles.

I do not agree that the plaintiff, Knauss, has admitted that the effect of the mortgage was to assign Burke's interest in the land. The majority base their conclusion of admission on the following statement made by Knauss's attorney to the trial court:

"We have no quarrel with the fact that they obtained a mortgage upon the interest that the Burkes had."

This statement does not constitute an admission that the effect of the mortgage was to assign Burke's interest to Miles. The majority, in my opinion, have misinterpreted the attorney's statement.

It is elementary that a mortgage on land is a mere lien, or security, for the payment of a debt and that it does not convey any title or estate in the property to the mortgagee.

"A mortgage is a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession." Section 35–02–01, N.D.C.C.

"A mortgage conveys no title or estate in real property covered by the mortgage but is merely a contract by which that property is hypothecated as security for the performance of an act." Aure v. Mackoff (N.D.), 93 N.W.2d 807.

See also: Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842; Federal Farm Mortg. Corporation v. Berzel, 69 N.D. 760, 291 N.W. 550; First Nat. Bank of Waseca v. Paulson, 69 N.D. 512, 288 N.W. 465; State v. Divide County, 68 N.D. 708, 283 N.W. 184.

The title of mortgaged property remains in the mortgagor even notwithstanding an agreement to the contrary. Section 35–01–08, N.D.C.C.; 37 N.D.L.Rev. 182; Federal Farm Mortg. Corporation v. Berzel, *supra*.

The lien theory of mortgages in North Dakota is well explained in Farm Mortgage Loan Co. v. Pettet, 51 N.D. 491, 200 N.W. 497, 36 A.L.R. 598.

It is well established in North Dakota that a mortgage does not constitute an assignment of the property mortgaged to the mortgagee.

Next, the majority conclude that if there is not a legal assignment there is an equitable assignment. They have correctly stated that an equitable assignment is one which, even though invalid at law as an assignment, is one which will be recognized and enforced in equity. However, they have failed to recognize that, in order to work an equitable assignment, it must be established that there was an absolute appropriation by the assignor of the property sought to be assigned to the assignee. Blount v. Metropolitan Life Ins. Co., 192 Ga. 325, 15 S.E.2d 413; Farmers' State Bank, McNabb, Ill. v. Kidd, 313 Ill.App. 132, 39 N.E.2d 394; Snipes v. Dexter Gin Co., 45 N.M. 475, 116 P.2d 1019–1020; Whiting v. Rubinstein, 7 Wash.2d 204, 109 P.2d 312; Gogebic Auto Co. v. Gogebic County Board of Road Com'rs, 292 Mich. 536, 290 N.W. 898; In re Goodwin's Estate, 163 Misc. 273, 296 N.Y.S. 733–736; Milford State Bank v. Parrish, 88 Utah 235, 53 P.2d 72–73; Nickerson v. Hollet, 149 Wash. 646, 272 P. 53; Southern Surety Co. v. Bering Mfg. Co. (Tex.Civ.App.), 295 S.W. 337–340; Melnick v. Pennsylvania Co. for Banking & Trusts, 180 Pa. Super. 441, 119 A.2d 825–827.

"An equitable assignment is such an assignment as gives the assignee *a title* which, although not cognizable at law, equity will recognize and protect, as in the case of an assignment of property, interest, or debt to be acquired or to accrue in the future." 6 C.J.S. Assignments § 1 b. [Emphasis added.]

"An equitable assignment is any order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the

assignee with the intent of transferring a present interest, but not amounting to a legal assignment. An equitable assignment may also be defined as an executory agreement or declaration of trust, not enforceable as an assignment by a court of law, which a court of equity, exercising a sound discretion, will execute or not, according to the circumstances of the case.

"The word assignment is sufficiently comprehensive to include the transfers of all kinds of property and property rights and is sometimes used synonymously with 'grant' so as to operate as a conveyance of the title to real property, but ordinarily it is limited in its application to the transfer of intangible rights, including contractual rights, choses in action, and rights in or connected with property as distinguished from the property itself. It may be observed that while every assignment is a transfer, not every transfer is an assignment." 6 Am. Jur.2d, Assignments, Section 1.

There is no evidence that the essential element of appropriation to work an equitable assignment is existent in this case. Burke remained in possession of the premises at all times after the mortgage was executed until Knauss cancelled his contract. A mortgagee is not entitled to possession of the property mortgaged, before foreclosure, in the absence of a clause clearly permitting it. Section 35–02–13, N.D.C.C.; McClory v. Ricks, 11 N.D. 38, 88 N.W. 1042; Farm Mortgage Loan Co. v. Pettet, *supra;* Hellstrom v. First Guaranty Bank, 49 N.D. 531, 191 N.W. 963. The execution of a mortgage does not entitle the mortgagee to possession of the property mortgaged. Hellstrom v. First Guaranty Bank, *supra.* The mortgage in this case is written on a standard, general form, regular in context, and does not grant possession to the mortgagee nor does it constitute an assignment by the mortgagor of his interests in the contract or in the land. Burke's equitable interest was mere-

ly impressed with a lien in favor of Miles to secure a debt.

For the reasons aforesaid, I cannot agree with the majority opinion.

This action is in equity. The plaintiff, Knauss, seeks to quiet the title to the land against Miles, and Miles, by its counterclaim, seeks to foreclose its mortgage and prays, in the alternative, for other equitable relief. The pleadings and the prayer contained in the moving papers are sufficiently broad to require the court to take the jurisdiction necessary to do complete justice between the parties. The court, having acquired jurisdiction, should retain it and do complete justice. Schmidt v. Johnstone, 31 N.D. 53, 153 N.W. 293; Coykendall v. Kellogg, 50 N.D. 857, 198 N.W. 472; Arhart v. Thompson, 75 N.D. 569, 31 N.W. 2d 56; United Accounts, Incorporated v. Larson (N.D.), 121 N.W.2d 628.

It appears that Knauss is now in possession of the land. Burke removed from the land after the cancellation action in 1964, which action is final, and Burke has no further interest in the matter. The instant action was commenced in 1965.

Burke was decreed to have a contract for deed in February, 1960. He was in possession of the land. He made no payments on the contract after the decree of February, 1960. He became indebted to Miles for materials purchased for a dwelling which he constructed on the land. He gave Miles a promissory note for his indebtedness and secured it with a mortgage describing the land. The mortgage impressed Burke's equitable interest with a lien. The mortgage was subsequent to Knauss's vendor's lien under the contract for deed. Knauss then cancelled the contract for deed naming Burke as a party but did not name or serve Miles in that action. The judgment cancelling Burke's contract for deed was entered and has become final. Knauss went into possession of the land and, in July, 1965, commenced the instant action against Miles to quiet the title. Knauss succeeded to Burke's equit-

able interest in the land when he cancelled the contract. Burke's equitable interest was impressed with the mortgage lien in favor of Miles. Miles's interest was not cut off by the cancellation action because Knauss had actual knowledge of Miles's mortgage but failed to name or serve it. Miles was a proper party in the cancellation action.

"Parties whose interests are acquired with notice of a vendor's lien, and against whom no personal judgment is sought, and whose right of redemption is not concluded by a judgment of foreclosure, while proper parties, are not necessary parties to a suit to foreclose the lien." 92 C.J.S. Vendor and Purchaser § 433 a, page 386.

"As a general rule, subsequent or junior lienholders and encumbrancers are proper, but not necessary, parties, unless there are special circumstances making them necessary or proper parties, as where they hold the legal title, or hold a prior lien. If they are not made parties, they are not bound by the decree and their rights will not be affected thereby, and they may redeem from the prior lien, as considered infra § 457, although they are not entitled to have another foreclosure of the vendor's lien." 92 C.J.S. Vendor and Purchaser § 433 b (2), page 387.

"Subpurchasers and junior lienholders who are not made parties to an action to foreclose a vendor's lien may redeem, but they cannot redeem on paying the amount bid at the foreclosure sale, or the amount of the judgment in such suit, but must pay the full price. A holder of a junior lien, however, who is not made a party defendant to foreclosure of a prior lien has no right to pay off the senior lien and take over the property until such junior lienholder first forecloses his lien and buys the equity of redemption under the foreclosure. The offer to redeem must be made within a reasonable time after foreclosure. Where a person has a plain, adequate, and complete remedy at law, there is no occasion for resort to the remedy by redemption." 92 C.J.S. Vendor and Purchaser § 457, page 421.

The effect of the failure to join Miles in the cancellation action made that action ineffective as to Miles. Rule 19(b), N.D.R. Civ.P.

On the basis of these facts, it appears to me that Knauss succeeded to Burke's equitable interest by the cancellation of Burke's contract but took it subject to the mortgage which is junior to Knauss's vendor's lien under the contract. Under the circumstances, the legal title held by Knauss was not affected by the mortgage lien but the equitable interest which Knauss obtained by the cancellation action is subject to both Knauss's vendor's lien and Miles's mortgage lien. Upon acquiring the legal and equitable titles to the land, Knauss became the absolute owner, subject to the lien of Miles. The two titles did not merge so as to allow Miles's lien to become a first lien upon the land. North Dakota Lumber Co. v. Haney, 23 N.D. 504, 137 N.W. 411; May v. Cummings, 21 N.D. 281, 130 N.W. 826. Therefore, I would hold that Miles may foreclose its mortgage against Knauss on the equitable interest which it covers, subject, however, to Knauss's prior vendor's lien. The equitable interest is the difference between the value of the land and Knauss's vendor's lien. Therefore, from the proceeds of the sale on foreclosure, Knauss's vendor's lien, which is the prior lien, must be paid first and, from the moneys remaining, payment should be made to Miles to the extent of its indebtedness secured by the mortgage, and any surplus moneys must be paid to Knauss as the successor owner of the equitable interest foreclosed upon.

## ON PETITION FOR REHEARING

STRUTZ, Judge.

The respondent has filed a petition for rehearing in which he strenuously asserts that the opinion of the court in this case

is basically erroneous for two reasons: (1) that we should have limited our scope of review on the appeal and should not have granted the appellant a trial anew in this court because, he asserts, a trial de novo was not properly demanded; and (2) that the appellant should be estopped from asserting its claim because it had knowledge of Knauss's action to cancel the Burke contract for deed and did nothing to attempt to intervene in that action, which it could have done to protect its rights. We shall discuss these issues in the order in which they are raised.

On the issue of trial de novo, the respondent asserts that such trial anew was not properly demanded in this case because the appellant did not file a statement of the case in which it made demand for trial de novo. Sec. 28–27–32, N.D.C.C. Because of its failure to file such statement, the respondent argues, a trial de novo has not been properly demanded, and this court may not try the case anew on appeal, citing Anderson v. Blixt, 72 N.W. 2d 799 (N.D.1955); and Retterath v. Retterath, 76 N.D. 583, 38 N.W.2d 409 (N.D. 1949).

■■■ The appellant's demand for trial de novo was made in its notice of appeal. If that were all that had been done, the respondent would be correct in his assertion that this court could not try the case anew. However, the demand for trial de novo was also contained in the settled statement of the case as certified by the trial court. We have held that in any case where a party is entitled to a trial de novo by making proper demand therefor, and the demand for trial de novo is contained in and is a part of the settled statement of the case as certified by the district judge, this court will retry the entire case on appeal. Renner v. Murray, 136 N.W.2d 794 (N.D.1965); Heggen v. Marentette, 144 N.W.2d 218 (N.D.1966).

When our examination of the record in this case disclosed that the settled statement of the case, as certified by the dis-

trict court, contained the demand for trial de novo, this court proceeded to retry the entire case on appeal. We believe that under the law and the prior decisions of this court, this action was entirely proper.

The second issue raised by the petition for rehearing is that the appellant should be estopped from asserting that it had not been served in the action by Knauss to cancel Burke's contract for deed, because the appellant had actual knowledge of Knauss's action against Burke and it did not attempt to intervene and take such steps as would be necessary to protect its interests. Surely, says the respondent, the courts should not reward the appellant for sleeping on its rights, to the detriment of the respondent.

■■■ Unless clearly warranted by the facts of the case, estoppel is not favored. Newman v. Albert, 170 Cal.App. 2d 678, 339 P.2d 588 (1959). To warrant the application of the doctrine of estoppel, the matter must have a strong appeal to the court's sense of justice. This court has held that estoppel arises where, by the conduct or acts of another, a party has been induced to alter his position or to do something, to his prejudice, which he otherwise would not have done. Sailer v. Mercer County, 75 N.D. 123, 26 N.W.2d 137 (1947); Woodside v. Lee, 81 N.W.2d 745 (N.D.1957); Grand Forks County v. City of Grand Forks, 123 N.W.2d 42 (N.D. 1963); Conklin v. North American Life & Casualty Co., 88 N.W.2d 825 (N.D.1958).

■■■ One cannot successfully plead estoppel in the absence of reliance upon acts claimed to operate as an estoppel which changed the position of the one claiming estoppel, to his prejudice. Kennedy v. Lynch Timber Co., 227 Mich. 269, 198 N.W. 985 (1924). Estoppel always is based on the fault of the party estopped. Conner v. Caldwell, 208 Minn. 502, 294 N. W. 650 (1940). Therefore, estoppel will not be applied by the courts unless the one against whom estoppel is asserted has, by

his acts, conduct, words, or by his silence when he ought to have spoken, misled another to act, to his detriment. In other words, the one who urges estoppel must show that he has been misled or placed in a worse position by the conduct of the one against whom he pleads estoppel. Where it is shown that he has been induced by the conduct of another to change his position, to his injury or disadvantage, the party whose conduct caused such change in position will be estopped from taking advantage thereof.

Let us now look at the record in this case and see whether the doctrine of estoppel should be applied. How has the position of Knauss changed, to his damage or disadvantage, by the failure of Miles to seek intervention in the suit brought by Knauss to cancel Burke's contract for deed? What did Miles do or refrain from doing which caused Knauss's position or his rights to be changed, to his damage or injury? Knauss evidently had decided that Burke never would pay the contract for deed, and that he should assert his legal rights and cancel the contract as to him. Knauss's failure to join Miles in his action resulted in the termination of Burke's rights only. Miles's failure to intervene, even if it did know of the action, as asserted by Knauss, did not injure Knauss's position or impair his rights in the least. Therefore, estoppel may not be asserted against Miles because Knauss has not shown how the failure of Miles to intervene altered his position, to his prejudice. Under the decision of this court, Knauss will receive every cent he has coming for his land, with interest and costs. On the other hand, if this court should rule for the respondent and find that Miles is estopped from asserting its rights because it failed to intervene in the action brought by Knauss to cancel Burke's contract, as urged by the respondent, then Miles would suffer the loss of its $10,000 building and Knauss would be enriched by that amount.

The respondent has not shown facts which would justify this court in finding that Miles should be estopped from asserting its claim.

For reasons stated, we adhere to our former opinion. The petition for rehearing is denied.

ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

TEIGEN, Chief Justice (dissenting).

The majority, by supplementary opinion, has determined to deny the respondent's petition for a rehearing. On reconsideration, I adhere to my dissent to the original majority opinion as to the law and equity. The petitioner-respondent also strenuously argues, in his petition for rehearing, that we misconstrued the facts when we found that Knauss had actual knowledge of Miles's mortgage before the commencement of the cancellation action. He has prayed, by separate petition filed in this court, for leave to file a motion for remand with a mandate to the trial court to take additional evidence on the question of Knauss's actual knowledge on this question. The testimony upon which we have concluded that Knauss had actual knowledge of the recording of Miles's mortgage was elicited from hostile questioning by the attorney for Miles and is, at best, very indefinite and lacking in probative force. The cancellation action was commenced in March of 1963. In December, 1965, at the trial of the instant action, Knauss testified that "maybe a couple years ago" he first knew a mortgage had been recorded. Another time he testified, "Well, two or three years ago." Knauss is a man who was over seventy years of age at the time of trial, and it is evident from the answers that he gave to the questions asked of him at the trial that his memory of past, recent events was not clear to him. I believe it would be in the best interests of justice to determine that material evidence on this question was excluded and to issue a mandate

to the trial court to take such evidence and to certify and return it to this court, during which time all proceedings in this court shall be stayed pursuant to authority contained in Section 28–27–32, N.D.C.C.